**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 7 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIAM BROOKS,

     Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant-Appellee.

No. 02-1449
(D.C. No. 00-S-68 (PAC))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **MURPHY** and **PORFILIO** , Circuit Judges, and **BRORBY** , Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff William Brooks, a white male employee of the Social Security Administration (SSA), did not receive a promotion to team leader in his division, the Denver Disability Quality Branch (DQB) of the Office of Quality Assurance and Performance Assessment (OQAPA). He filed a lawsuit pursuant to 42 U.S.C. § 2000e-16 alleging discrimination based on gender and race. After a three-day jury trial, but before the case was submitted to the jury, the district court granted defendant Commissioner Jo Anne B. Barnhart's motion for judgment as a matter of law. Mr. Brooks appeals arguing that (1) the district court improperly granted the motion and (2) the district court abused its discretion in refusing to allow him to present evidence that his co-workers believed he was better qualified for the promotion than the person selected. Because we conclude the district court erred in granting the motion and abused its discretion in refusing to admit the evidence, we reverse and remand for further proceedings.

In April of 1988, the SSA announced a vacancy for a GS-13 team leader position at the Denver DQB. The vacancy announcement indicated that a document listing "Factors and Weights" would establish whether an applicant was qualified. The "Factors and Weights" indicated that related experience was most important and training and awards weighed less heavily. Mr. Brooks, as well as others, applied. The personnel office in Dallas, Texas, selected those applicants,

including Mr. Brooks, who were best qualified and who could be considered by the selecting official for the team leader position.

Joseph A. Gribbin, Ph.D., a white male and the Associate Commissioner for the OQAPA located at the SSA's headquarters in Baltimore, Maryland, was the formal selecting official. Before Dr. Gribbin made his selection, however, several things happened. Ronald R. Miller, Ph.D., the white male director of the Denver Regional OQAPA, reviewed the best qualified list and directed Pamela Mayeda,[1] the director of the Denver DQB and direct supervisor of the team leaders, a white female, to conduct interviews. After the interviews, she prepared a ranking sheet including a narrative for each candidate. She recommended to Dr. Miller that Wanda Stephenson, a white female, be selected for the team leader position. Dr. Miller reviewed the applications again, along with Ms. Mayeda's rankings and narrative. Although Dr. Miller changed the order of Ms. Mayeda's rankings, he recommended to Dr. Gribbin that Ms. Stephenson be selected. Based on

---

[1] It is undisputed that Ms. Mayeda played an influential role in the selection process. *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) ("Even if a manager was not the ultimate decisionmaker, that manager's . . . motive may be imputed to the company if the manager was involved in the [employment] decision."); *see also English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1011 (10th Cir. 2001) (requiring plaintiff to show decision maker followed biased recommendation of subordinate without making independent assessment).

Dr. Miller's recommendation, Dr. Gribbin selected Ms. Stephenson for the team leader position.

Mr. Brooks then filed this lawsuit asserting he had been discriminated against on the basis of race and gender. The district court denied the Commissioner's motion for summary judgment, and the case proceeded to trial. At the close of the trial testimony, the Commissioner moved for judgment as a matter of law. The district court granted the motion. Mr. Brooks appeals.

## I. Judgment as a Matter of Law

Mr. Brooks first argues the district court erred in granting the Commissioner's motion for judgment as a matter of law. We review de novo the district court's grant of judgment as a matter of law. *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). "[A] court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (quotation omitted); *see also Greene*, 98 F.3d at 557 ("Unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion, . . . judgment as a matter of law is improper."). In considering judgment as a matter of law, a court must examine all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party,

without weighing the evidence or making credibility determinations. *Reeves*, 530 U.S. at 150. Only a jury may make credibility determinations, weigh evidence, and draw legitimate inferences from the facts. *Id.*[2]

Applying this standard, we conclude the district court erred in entering judgment as a matter of law against Mr. Brooks. After reviewing all of the evidence, we determine the district court did not draw all reasonable inferences in favor of Mr. Brooks, ignored some evidence favorable to him, and "substituted its judgment concerning the weight of the evidence for the jury's." *Id.* at 152-53.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and other Supreme Court cases "'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)) (alteration in original). First, Mr. Brooks was required to establish a prima facie case of discrimination for failure to promote. *Id.* The Commissioner assumes that Mr. Brooks met this burden, *see* Appellee's Br. at 15, by showing (1) circumstances supporting an inference that the SSA is "one of those unusual employers who discriminates against the majority;" (2) he applied for and was

---

[2] Because the standard for granting summary judgment is the same as the standard for granting judgment as a matter of law, *see Reeves*, 530 U.S. at 150, Mr. Brooks argues the district court erred in granting judgment as a matter of law after denying the Commissioner's motion for summary judgment. In light of our decision to remand for a new trial, we do not address this argument.

qualified for the team leader promotion; (3) he was rejected for the promotion; and (4) Ms. Stephenson, who was not in the majority group, received the promotion,[3] *Notari v. Denver Water Dep't*, 971 F.2d 585, 588-89 (10th Cir. 1992); *see Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995). The burden then shifted to the Commissioner to produce evidence that Mr. Brooks was not promoted for legitimate, nondiscriminatory reasons. *Reeves,* 530 U.S. at 142. The Commissioner met this burden by asserting a facially nondiscriminatory reason for not promoting Mr. Brooks: he was not the best qualified candidate for the team leader position. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999) (recognizing employer's burden is "exceedingly light"); *Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir. 1984) (concluding superior qualifications are legitimate, nondiscriminatory reason for failing to promote).

At this point, Mr. Brooks must prove that this legitimate reason was not the true reason for the Commissioner's employment decision, but instead was a pretext for discrimination. *See Reeves*, 530 U.S. at 143. At all times, Mr. Brooks retained the ultimate burden of proving the defendant intentionally discriminated against him. *Id.*

---

[3]     The district court decided that whether Mr. Brooks established a prima facie case was a close call, but nonetheless established. Aplt's App., Vol. 1 at 18-19.

Mr. Brooks points to three types of circumstantial evidence to show that the Commissioner's reason was pretextual and gave rise to an inference that he was not promoted for race and gender reasons: (1) he was better qualified for the team leader position than Ms. Stephenson; (2) there was a pattern of rejecting white males for promotion; and (3) Ms. Mayeda was more comfortable working with women than men. Considering the totality of Mr. Brooks' proffered evidence, *see Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1331 (10th Cir. 1999), we conclude there was a factual question for the jury to decide. *See Bell v. EPA*, 232 F.3d 546, 554 (7th Cir. 2000) ("Different kinds and combinations of evidence can create a triable issue of intentional discrimination.") (quotation omitted).

First, Mr. Brooks asserts he was better qualified for the team leader position than Ms. Stephenson. In making this assertion, he relied on the "Factors and Weights" used to select the best qualified applicants. His evidence showed he had more related experience than she did. He had twenty-four years' experience reviewing disability claims, which is eighty percent of a team leader's duties.[4] For eleven of those years, he worked at Colorado Disability

---

[4] The other duties included leading the team; managing the workload; training staff; designing, coordinating and analyzing studies; making recommendations on awards, appraisals, and disciplinary action; and participating in management meetings and other management functions.

Determination Services (DDS). During six months of that time, he acted as a supervisor. In 1985, he was hired at the DQB. He started as a disability examiner, and in 1994 became a vocational consultant. From 1993 to 1998, he served as a back-up team leader. After working four months as a temporary team leader in 1995 and 1996, he received a performance award, based in part on his team leader performance. He received four quality step increases (QSI) and was one of the first disability examiners to receive a competitive promotion from GS-11 to GS-12 at the DQB. He received several other awards and the highest possible performance ratings. Additionally, he is a nationally recognized expert on vocational aspects of disability, and he created an electronic Dictionary of Occupational Titles. His training, both that which he took and that which he gave, focused on disability-oriented issues. Overall, Mr. Brooks always received positive feedback and praise for his work, including his training of state DDS employees.

In comparison, Ms. Stephenson had a broader range of experience, working on all types of cases during all possible phases. She had field office, area director's office, training facility, disability programs branch, DQB, and Assistance and Insurance Program Quality Branch experience. Ms. Stephenson worked her way up the ranks and held management positions in the field office. On each of her jobs, she served as a trainer. If no agenda existed for training, she

wrote the agenda and provided all training material. She, however, had been a disability examiner at the DQB for only five years at the time of her promotion and had never done any team leader work at that time. She did serve as a back-up for the program analyst. When she worked in a field office, Ms. Stephenson received a Regional Commissioner Citation, the highest possible agency award, and one QSI. Throughout her career, she participated in all possible career enrichment and development programs and had a continual progression of training. Most of her training, however, was not in the disability area.

The Commissioner maintained the objective "Factors and Weights" were relevant only to screen applicants and were not used to decide which applicant to promote. Rather, Ms. Stephenson was selected as team leader based on the subjective criteria that she had a breadth of experience and a pattern of career development program participation. The use of subjective promotion criteria may be evidence of pretext. *See Simms*, 165 F.3d at 1328; *see also Bergene*, 272 F.3d at 1142.

Dr. Miller admitted Mr. Brooks had stronger vocational experience and had DDS experience, whereas Ms. Stephenson did not. But he stated that prior management experience, analytic experience, adaptability, flexibility, and participation in career development programs were important criteria for a team leader. Ms. Mayeda described Mr. Brooks as an excellent vocational consultant,

who lacked the initiative Ms. Stephenson had to train in different areas or handle different assignments. Also, she felt he currently lacked experience with childhood disability claims, as those cases have no vocational element. Ms. Mayeda believed a team leader should be someone she could depend on who could manage different tasks at the same time and who had a broad scope and knowledge. She did concede that overall the agency places the most emphasis on experience. *See* Aplt's App., Vol. 2 at 351.

The two team leaders chosen before and after Ms. Stephenson's promotion had no field office experience and thus no breadth of experience. Like Mr. Brooks, their experience before coming to the DQB was at a state DDS. According to Mr. Brooks, this suggests the hiring criteria changed to suit the person preferred for promotion. *Cf. Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1177 (10th Cir. 2001) ("Evidence sufficient to raise a fact issue on whether a defendant's proffered explanation is pretextual may take a variety of forms, including evidence that the defendant treated the plaintiff differently from others who were similarly situated, which we have held is especially relevant to a showing of pretext.").

Based on the above, we disagree with the district court finding that there is an absence of evidence of pretext regarding the relative qualifications of

Mr. Brooks and Ms. Stephenson. [5] *See* Aplt's App., Vol. 1 at 35-36. Instead, we believe this evidence is sufficient to present a fact question to be decided by a jury.

Mr. Brooks next asserts there is a pattern in the DQB of preferring women for promotion. No white male has ever been promoted from GS-12 to GS-13 at the Denver DQB. [6] Out of four team leader promotions, three were women and one was a minority male. *Cf. Bergene*, 272 F.3d at 1143 (lack of women supervisors was evidence of pretext). Dr. Miller always accepted Ms. Mayeda's selection for a team leader promotion. The district court believed that any statistical evidence Mr. Brooks presented did not rebut the Commissioner's legitimate, nondiscriminatory reason for selecting Ms. Stephenson for the promotion and did not show that the reason was pretextual. *See* Aplt's App., Vol. 1 at 38-39.

---

[5] The district court did correctly note that Mr. Brooks' seniority was not enough to support a finding that he was more qualified. *See Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994). Seniority, however, was only part of Mr. Brooks' assertion that he was more qualified than Ms. Stephenson to be promoted to team leader. As indicated above, he also pointed to his experience, reputation, training, awards, and recognition.

[6] Dr. Miller managed more than just the Denver DQB. In fact, during his tenure, he made three GS-13 promotions to men, which was a proportionately greater number of promotions to men than women based on the total number of men in the office.

"[S]tatistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class." *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991). The evidence Mr. Brooks presents alone does not establish pretext or discrimination. "In conjunction with other evidence of disparate treatment, . . . statistics can be probative of whether the alleged disparity is the result of discrimination." *Bell*, 232 F.3d at 552 (quotation omitted). Mr. Brooks' pattern evidence, along with other evidence, may be sufficient to show pretext, but, again, that is a jury question.

Third, Mr. Brooks points to his and his co-workers' testimony that Ms. Mayeda treats male and female employees differently. Mr. Brooks admitted to having an acceptable working relationship with Ms. Mayeda and to liking her. And he admitted she had not said anything disparaging about his race or gender during the application process. Nonetheless, he testified that any social gatherings in her office included only white females. Also, his testimony indicated she had ridiculed a male employee, a veteran that she was forced to hire, in a way that she would not do to a female.

Consistently, Corrine Bussa, a co-worker, testified that Ms. Mayeda socialized with female employees, but maintained only a work association with male employees. Likewise, James Johnson testified that Ms. Mayeda interacted

-12-

on a social and casual level only with the females. She created an atmosphere where females complained to her. Even though he was told by his team leader at Ms. Mayeda's request not to socialize, he observed females doing so for lengthy periods of time. Ms. Mayeda assigned all work-related trips to North Dakota to a female disability examiner who had relatives in that state. In comparison, Ms. Mayeda did not allow Mr. Johnson to take all of the work-related trips to South Dakota, where he had relatives. Mr. Johnson testified that Ms. Mayeda told him disparaging things about the veteran she was forced to hire, and Mr. Johnson also heard her make other disparaging comments about him. When the veteran and a female were having difficulty keeping up with their work, Mr. Johnson noticed they were treated differently. Like the others, Linda Conner testified that Ms. Mayeda is more comfortable working and interacting with women than with men. She talks to men only for business reasons and socializes with women. When Ms. Mayeda is in a mixed group, she directs her attention to the women.

Contrary to Mr. Brooks' and his co-worker's testimony, Dr. Miller testified that he had never seen Ms. Mayeda treat men differently than women, and he was aware of no hostility toward men. And Sherri Radtke, who testified for the Commissioner, denied that females in the office socialized with each other to the exclusion of the males. Further, all of the Commissioner's witnesses testified that males and females in the office were treated equally.

-13-

The district court failed to consider this evidence. Like the qualifications and pattern evidence, we believe this evidence was probative of whether there was pretext for discrimination.

Both the district court and the Commissioner rely on the settled law that courts "do[] not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* at 550 (quotation omitted). A business decision, however, "is not impervious to alternate proof." *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 926 (10th Cir. 2001). The appropriate "inquiry is not whether the [Commissioner] made the best choice, but whether it was the *real* choice for" failing to promote Mr. Brooks. *Id.* That is a question for the jury.

Viewing the evidence in the light most favorable to Mr. Brooks, we conclude the jury could draw different inferences from the evidence. *See Anaeme*, 164 F.3d at 1283. Reasonable minds could differ as to whether Mr. Brooks was not promoted for a discriminatory reason. Granting judgment as a matter of law under these circumstances intruded on the jury's function. Thus, the district court erred in granting the Commissioner's motion for judgment as a matter of law.

## II. Exclusion of Evidence

Mr. Brooks argues the district court abused its discretion in excluding his co-workers' testimony that he was better qualified for promotion than

-14-

Ms. Stephenson. The court allowed these co-workers to testify they were surprised by the team leader selection, but not why they were surprised. Aplt's App., Vol. 2 at 192-93. Also, the court allowed the co-workers to testify about their personal experiences, but not about their personal opinions of Mr. Brooks' and Ms. Stephenson's qualifications. [7] *See id.*, Vol. 1 at 46-47. The court believed the qualifications question was for management to resolve. *Id.* at 47. Additionally, the district court determined that although the Federal Rules of Evidence would not bar the admission of this qualifications evidence, it was sensitive to have lay witnesses essentially testifying that Mr. Brooks should win his case. *See id.*, Vol. 2 at 193.

Under the circumstances presented here, we conclude the district court abused its discretion in refusing to allow Mr. Brooks' co-workers to testify about his qualifications. *See Davoll v. Webb*, 194 F.3d 1116, 1136 (10th Cir. 1999) (reviewing district court evidentiary ruling and ruling on motion in limine for

---

[7] For example, Ms. Bussa testified that she frequently asked Mr. Brooks questions about her cases involving vocational decisions or policy concerns. He had served as her team leader for three months and as a back-up to her regular team leader. She described him as very competent, very knowledgeable, easy to get along with, and generous at providing instruction when he disagreed with her opinion. Although she infrequently dealt with Ms. Stephenson, Ms. Bussa stated she never saw Ms. Stephenson do any team leader work. Further, she stated she did not think field office experience was relevant to disability examiner work. The court, however, refused to allow Ms. Bussa to testify about her observations of what aspects of the work Mr. Brooks and Ms. Stephenson each did better. *See* Aplt's App., Vol. 2 at 193-94.

abuse of discretion; reviewing district court's interpretation of Federal Rules of Evidence de novo); *see also Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997) (permitting plaintiff to make prima facie showing of qualification with testimony from himself and co-workers who were in position to know plaintiff's qualifications); *Fallis*, 944 F.2d at 747 (recognizing without criticism that plaintiff presented co-workers' testimony that he was good performer, but also recognizing that even if jury believed testimony concerning plaintiff's performance, that alone was not sufficient to establish pretext).

> Under Fed. R. Evid. 701, the testimony of a lay witness "in the form of opinions or inferences" is admissible if those opinions or inferences "are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Courts generally hold admissible under Rule 701 evidence in the form of lay opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices.

*Gossett*, 245 F.3d at 1179. Thus, "[l]ay opinion testimony may be helpful even if it bears on the ultimate issue in the case." *Hester v. BIC Corp.*, 225 F.3d 178, 182 (2d Cir. 2000).

Here, the co-worker testimony Mr. Brooks sought to present would have been helpful to counter the Commissioner's evidence that Ms. Stephenson was the more qualified candidate. Mr. Brooks' evidence would not have told the jury what result to reach, because the jury could decide whether to believe the

co-worker opinion testimony. [8] Also, and more importantly, the evidence regarding the relative qualifications of Mr. Brooks and Ms. Stephenson would not have predetermined the ultimate issue presented in this case: whether the Commissioner discriminated against Mr. Brooks, a white male, by denying him the team leader promotion.

The judgment of the district court is REVERSED, and the case is REMANDED for a new trial on Mr. Brooks' discrimination claims.

Entered for the Court


John C. Porfilio
Circuit Judge

---

[8] The district court's ruling on the admissibility of the co-worker testimony in effect was also a ruling on the weight of the evidence, which, of course, is solely in the province of the jury.