Thomas D. HORVATH, Plaintiff,

v.

Tommy G. THOMPSON, Secretary,
Department of Health & Human
Services, Defendant.

No. CIV.A. 02–2157 ESH.

United States District Court,
District of Columbia.

April 23, 2004.

Thomas D. Horvath, Arlington, VA, Pro se.

Stratton Christopher Strand, United States Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff, who was employed in 1997 as a staff attorney at the Department of Health and Human Services' ("HHS") Departmental Appeals Board ("DAB"), has filed a *pro se* reverse gender discrimination suit against his employer,[1] alleging his non-selection for promotion to Chief of the DAB's Civil Remedies Division ("CRD") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Defendant has moved for summary judgment, arguing that plaintiff has failed to present sufficient facts to permit a reasonable jury to conclude that plaintiff was discriminated against based on gender. For the reasons set forth below, the Court concludes that defendant's motion should be granted.

## BACKGROUND

In 1997, plaintiff was employed as a staff attorney by the DAB, a component of HHS. The DAB reviews decisions made by other HHS components, which administer a wide range of programs under various statutory provisions. Originally, the DAB's jurisdiction was limited to disputes arising under large public assistance grants, such as Medicaid and Aid to Families with Dependent Children. In the late 1980s, DAB was given additional responsibility for adjudicating civil money penalties and exclusions under a wide range of fraud and abuse authorities. The DAB was then organized into two divisions—the Appellate Division and the CRD. The Appellate Division performs a number of functions including: (1) providing staff support for the DAB's Board Members; (2) providing *de novo* review of HHS determinations under certain grant programs; and (3) providing appellate review of certain types of Administrative Law Judge ("ALJ") decisions, including decisions of ALJs assigned to the CRD. In contrast, the CRD provides staff support for the DAB's ALJs, who conduct evidentiary hearings involving fraud and abuse determinations and civil monetary penalty determinations. In the 1990s, two additional divisions were added to the DAB—the Alternative Dispute Resolution ("ADR") Division and the Medicare Operations ("MOD") Division.

Plaintiff began his tenure with the DAB in 1978. As a staff attorney in the Appellate Division, plaintiff's primary function was to advise Board Members on questions of law and administrative policy and to research and write draft decisions in cases assigned to Board Members. (Def.'s Statement of Material Facts Not in Genuine Dispute ["Def.'s Stmt."] ¶ 9.) With the exception of a brief detail to the CRD from November 1996 to April 1997 (*id.* ¶ 8), plaintiff was assigned to the Appellate Division until February 2003, when he was transferred to the CRD as a senior attorney. (Def.'s Mot., Ex. A [Horvath Dep.] at 26.)

---

1. Plaintiff withdrew his claim against the Equal Opportunity Employment Commission ("EEOC"), and thus, it is no longer a party to this action.

In April 1997, then-Chief of the CRD, Gerald Choppin, retired. Defendant advertised the vacant position in October 1997. (Def.'s Mot., Ex. G.) The job description indicated that it would entail, *inter alia*, supervising staff attorneys; drafting memoranda, analyses, reports, and written opinions; and assisting the DAB Chair in overall management of DAB resources dedicated to the hearing and adjudication of civil remedies cases. (Def.'s Mot., Ex. F at 2–3.) The four applicants for the position included plaintiff and three women. All four were internal candidates. The DAB's Chair, Mr. Norval J. Settle, was the selecting official. After interviewing all four candidates (Def.'s Mot., Ex. H [EEOC Hearing Tr.] at 93), Mr. Settle selected Ms. Williams for the position on December 1, 1997. (Def.'s Mot, Ex. J [Selection Certificate].) Plaintiff asserts that this decision was made "solely on the basis of his gender/sex" in violation of Title VII. (Compl. at 1.) Mr. Settle maintains that gender was not a factor in the selection, but rather, he chose Ms. Williams because he viewed her as the best candidate for a variety of reasons. (Def.'s Mot, Ex. H [EEOC Hearing Tr.] at 94.)

Plaintiff filed an administrative complaint. Defendant investigated, and after a hearing, an EEOC Administrative Judge issued a bench decision finding no discrimination. (*See* Def.'s Mot., Ex. R.) On November 26, 1999, defendant issued a final agency decision adopting the decision of the Administrative Judge. (Def.'s Mot., Ex. S.) Plaintiff appealed that decision to the EEOC's Office of Federal Operations. On August 5, 2002, that office affirmed. (Def.'s Mot., Ex. T.) Plaintiff sought reconsideration, which was denied. (Def.'s Mot, Ex. U.) Plaintiff commenced this action on November 4, 2002, and after the parties conducted discovery, defendant has moved for summary judgment.

## ANALYSIS

### I. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Wash. Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, No. 95–2397, 1998 WL 164780, at *3 (D.D.C. March 31,

1998) (internal citation omitted), *aff'd*, No. 99–5126, 1999 WL 825425, at *1 (D.C.Cir. Sept. 27, 2000).[2]

## II. DISCRIMINATION CLAIM

Defendant seeks summary judgment, thus triggering the application of the *McDonnell Douglas* three-part "shifting burdens" test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff has the initial burden of proving a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. If he succeeds, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its actions. *Id.* Its burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment."). If defendant is successful, then "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citations and quotation marks omitted). At that point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also*

*Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C.Cir.) ("[a]lthough the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal citations and quotation marks omitted), *cert. denied*, —— U.S. ——, 124 S.Ct. 325, 157 L.Ed.2d 146 (2003).

"At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27–28 (D.C.Cir.1997). Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir.1994)). "Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." *Id.* In other words, a district court judge does not sit as a "super-personnel depart-

---

**2.** In addition, Local Civil Rule 7(h) provides that "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the part of the record relied on to support the statement."

ment that reexamines an entity's business decisions." *Id.* (internal citation and quotation marks omitted).

■ Moreover, the law recognizes that a reverse discrimination claim, such as presented by plaintiff in this case, is difficult to establish. In addition to setting forth the usual prima facie case, a reverse discrimination plaintiff must demonstrate "additional background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Harding v. Gray,* 9 F.3d 150, 153 (D.C.Cir. 1993) (internal citation and quotation marks omitted). This burden is even tougher here since plaintiff's gender is the same as that of the selecting official. *Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 573 (7th Cir.1998) (person making challenged employment decision was within the same protected class as the applicant).

■ Since defendant "assume[s] for purposes of this motion that Plaintiff can establish a *prima facie* case" (Def.'s Mot. at 6), the burden shifts to defendant to articulate a legitimate nondiscriminatory reason for not promoting plaintiff. *See Morgan,* 328 F.3d at 654 (once defendant proffers a nondiscriminatory reason, he "has done everything that would be required of [him] if the plaintiff had properly made out a prima facie case") (internal citation and quotation marks omitted). Defendant has met this burden by articulating a legitimate, nondiscriminatory reason for its failure to select plaintiff for promotion.

In particular, Mr. Settle, the selecting official, testified at the EEOC hearing that he considered Ms. Williams to be the best candidate. He found that Mr. Horvath and Ms. Williams—along with the other two applicants—each met the basic job requirements. (Def.'s Mot., Ex. H [EEOC Hearing Tr.] at 83–84.) However, because the position was a managerial one, Mr. Settle placed value on a "commitment to excellence." (*Id.* at 86.) He believed Ms. Williams possessed such qualities, including being "a real aggressive go-getter, . . . extremely competent, [and] the kind of person who gives 110 percent." · (*Id.* at 87.) He noted that her substantive work was "excellent" (*id.* at 89), that she received "outstanding" performance evaluations (*id.*), and was highly regarded by the previous Chief of the CRD, (*id.* at 87). He also noted that she was well-respected by the ALJs (*id.* at 87), had relevant experience co-acting as manager in the position (*id.* at 88), was proactive (*id.* ("[s]he was in front of the issues.")), and was assertive (*id.* ("she was more than willing to stand up to me, tell me what she thought")).

In contrast, Mr. Settle viewed plaintiff as someone who "did a good, competent, workmanlike job." (*Id.* at 84.) With respect to competency, direction, and commitment, he rated Mr. Horvath's work a "C plus." (*Id.*) Based on his experience working with Mr. Horvath for seventeen years, he felt there were times when Mr. Horvath did good work, but at times he would "do what he had to do and go home." (*Id.* at 84–85.) He noted that Mr. Horvath was "never an overly enthusiastic worker." (*Id.* at 85.) Further, he noted that Mr. Horvath had spent the "vast majority of his time in working with grant appeals," with "only a few months" experience working in the civil remedies area. (*Id.*)

■ Because defendant has proffered a legitimate nondiscriminatory reason for its promotion decision, plaintiff must adduce evidence sufficient to convince a trier of fact that defendant's reason was merely a pretext. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. In this regard, plaintiff at-

tempts to discredit Mr. Settle, whose testimony before the EEOC is the centerpiece of defendant's claim that it had a nondiscriminatory reason for not promoting Mr. Horvath. (Pl.'s Stmt. of Facts in Genuine Dispute ["Pl.'s Stmt."] at 12–14.) First, plaintiff complains that he was unable to adequately examine Mr. Settle during that EEOC proceeding because the judge allegedly curtailed plaintiff's questioning and allowed Mr. Settle to receive assistance from HHS counsel. (Id. at 12–13.) He also disputes Mr. Settle's testimony that "he gave Plaintiff and the other applicants advance notice of their interview times and talked with each of the applicants for approximately 30 minutes." (Id. at 13). Plaintiff could have cured any limitations in his examination of Mr. Settle by deposing him in this case. And more importantly, any potential discrepancy in Mr. Settle's testimony about the interviews does not amount to a material issue of fact, as it fails to call into doubt his good faith belief in the selected candidate's credentials. Fischbach, 86 F.3d at 1183.

■ Besides, contrary to Mr. Horvath's claim that the "selecting official completely manipulated the selection process in order to discriminate against Plaintiff, the lone male applicant" (Pl.'s Stmt. at 15), the affidavit of Peggy McFadden–Elmore, one of the female applicants, demonstrates that Mr. Horvath was treated no differently than she was during the interview process. Both were given the option to take a few minutes to prepare for their interviews, which lasted about ten minutes. (See Pl.'s Ex. 13 [McFadden–Elmore Aff.] at 2; Def.'s Mot, Ex. I [Horvath Aff.] at 2; Pl.'s Ex. 14 [Rosalie Horvath Decl.] at 1.) Indeed, the selecting official testified that all four candidates were given approximately the same amount of time for their interviews. (Def.'s Mot., Ex. H [EEOC Hearing Tr.] at 90.) [3]

Additionally, Mr. Horvath attempts to establish discrimination by arguing that he was better qualified than the successful candidate (Pl.'s Resp. to Def.'s Mot. for S.J. ["Pl.'s Opp."] at 5); and based on statistical evidence, the "Departmental Appeals Board in general, and the Civil Remedies Division in particular, had a practice of favoring females over males in employing attorneys." (Id. at 6.) However, these arguments are not sufficient to support an inference of discrimination.

3. Further, plaintiff's attempts to discredit Mr. Settle's assessment of his experience are to no avail. (See, e.g., Pl.'s Stmt. at 6.) Not only is there a lack of evidence that Mr. Settle was aware of the additional relevant experience that plaintiff cites to, but additionally, plaintiff's own subjective assessment of his "extensive" experience does not suffice to show pretext. "[P]laintiff's perception of h[im]self, and of h[is] work performance, is not relevant. It is the perception of the decisionmaker which is relevant." Waterhouse v. Dist. of Columbia, 124 F.Supp.2d 1, 7 (D.D.C.2000) (internal citation and quotation marks omitted), aff'd, 298 F.3d 989 (D.C.Cir.2002). In addition, Mr. Horvath disputes certain statements in Ms. Williams' job application regarding her caseload, volunteering for complex cases, and the extent of her experience in evidentiary hearings. (Def.'s Mot., Ex. E [Williams App.] at 7–8.) He claims that "Defendant's 'evidence' on these matters is nothing more than assertions in a job application, a document, Plaintiff would suggest, where individuals have been known to inflate their qualifications for a job." (Pl.'s Stmt. at 7.) Plaintiff's attempt to cast aspersions on Ms. Williams' record cannot serve to discredit Mr. Settle's good faith belief in her qualifications. Moreover, reference to the affidavit of one experienced ALJ, who "cannot recall anything outstanding about the successful candidate's work experience to set her apart from the other staff attorneys" (id. at 7–8), is insufficient to raise an inference that Ms. Williams inflated her qualifications. And, the ALJ's perceptions are simply irrelevant to whether Mr. Settle had a good faith belief in the superiority of Ms. Williams' qualifications. Fischbach, 86 F.3d at 1183.

## A. Applicants' Qualifications

Plaintiff argues that he has "demonstrated that he was better qualified for the position of Chief of the Civil Remedies Division than the successful candidate." (Pl.'s Opp. at 5.) However, Mr. Horvath's claim that he was the better candidate is both factually unsupported, as well as legally insufficient. In two opinions, the D.C. Circuit has explained that, in a dispute involving relative job qualifications, discrimination will not be inferred absent a showing that plaintiff's qualifications were *far superior* to the successful candidate's. In *Aka v. Wash. Hosp. Ctr.*, the Circuit noted:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

156 F.3d 1284, 1294 (D.C.Cir.1998) (*en banc*) (emphasis added). In that case, Aka's job qualifications were far superior to those of Valenzuela, the candidate selected for a hospital pharmacy technician job. *Id.* at 1299. Aka had nineteen years of experience handling pharmaceutical supplies, compared with Valenzuela's two months of volunteer work at a pharmacy. *Id.* at 1296–97. Aka had a master's degree in business and professional administration with a concentration in health service management, while Valenzuela had no college degree. *Id.* at 1297. Aka's credentials were sufficiently superior to those of the successful candidate to create a jury question as to whether the hospital's proffered reason for its decision was false.

In contrast, in *Stewart v. Ashcroft*, 352 F.3d 422 (D.C.Cir.2003), there was no such evidence of *"stark superiority of credentials"* between plaintiff and the successful candidate for the position of Chief at the Department of Justice's Environmental Crimes Section. *Id.* at 429–30 (emphasis added). Stewart had more prosecutorial experience in environmental matters, but Uhlmann—the successful candidate—also had significant prosecutorial experience, with over twenty-five jury trials to his credit. *Id.* at 430. Stewart had two years of service as an Assistant United States Attorney, compared with Uhlmann's six months in that position. *Id.* The Circuit found that these "fine distinctions" were not sufficient to raise a jury question. *Id.*

> Stewart's pointing to differences in qualifications that merely indicate a "close call" does not get him beyond summary judgment. This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race played a part in the decision.

*Id.* at 430; *see also Edwards v. Principi*, 80 Fed.Appx. 950, 2003 WL 22709001, at *2 (5th Cir.2003) (to show pretext, "a plaintiff [must] show a difference in his qualifications superior to that of the person selected so apparent as to virtually jump off the page and slap us in the face") (internal citation and quotation marks omitted). In short, it falls to plaintiff "to address the issue of *discrimination*, not to quibble about the candidates' relative qualifications." *Skelton v. ACTION*, 668 F.Supp. 25, 26 (D.D.C.1987), *aff'd*, No. 87–5353, 1988 WL 156306, at *1 (D.D.Cir. May 12, 1988).

Mr. Horvath's evidence utterly fails to demonstrate superiority, no less a stark one. Instead, his argument amounts to an invitation to second guess defendant's promotion decision involving qualified candi-

dates—an invitation the Court cannot accept. *Stewart*, 352 F.3d at 430. First, plaintiff emphasizes his own qualifications for the job. For example, he notes that his substantive knowledge and experience satisfies the job vacancy announcement's ranking factors.[4] (Pl.'s Stmt. at 4–7.) But this is irrelevant since it does nothing to prove the superiority of Mr. Horvath's qualifications as compared to those of Ms. Williams, and second, defendant does not dispute that plaintiff was basically qualified for the job. (Def.'s Mot., Ex. H [EEOC Hearing Tr.] at 83–84 ("In other words, all of [the applicants] were above some theoretical line of competence that meant they would not have been a failure in the job from my perspective.").)

Plaintiff also engages in an extensive comparison of his experience with that of Ms. Williams. (Pl.'s Stmt. at 7–11.) For example, he compares his 20 years' experience at the DAB with Ms. Williams' seven years within the CRD, and his experience in all three DAB divisions with Ms. Williams' experience only in the CRD. (Pl.'s Stmt. at 5.)[5] However, it was within the selecting official's prerogative to place greater value on Ms. Williams' managerial experience and her more extensive experience within the CRD.[6] *Stewart*, 352 F.3d at 429 ("Because courts are not super-personnel department[s] that reexamine[ ] an entity's business decision[s], we defer to the Government's decision of what nondiscriminatory qualities it will seek in filling the Chief position.") (internal citation and quotation marks omitted).

Additionally, plaintiff inexplicably makes much of his performance evaluations, as compared to those of Ms. Williams. Those evaluations show that, in the three years immediately preceding the promotion, Ms. Williams consistently received outstanding ratings while plaintiff received two outstanding ratings and one excellent rating. (*See* Def.'s Mot, Ex. L–N [Williams Evaluations]; Ex. O–Q [Horvath Evaluations].) Mr. Horvath attempts to discredit the evaluations by, for example, noting that one of Ms. Williams' forms was not signed, and that his "excellent" rating was only one point from "outstanding." (Pl.'s Stmt. at 8–9.) But even so, at most, this shows that both had strong performance evaluations, and thus, this factor lends absolutely no credence to a claim of discrimination.

Plaintiff also contends that the use of "subjective promotion criteria, such as 'initiative' . . . may in itself be evidence of pretext." (Pl.'s Opp. at 8.) The D.C. Circuit in *Aka* recognized that use of subjective selection criteria *may* lead to a jury question "[p]articularly in cases where a jury could reasonably find that the plaintiff was otherwise significantly better qualified than the successful applicant, an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination." 156 F.3d at 1298; *but see Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Services*, 165 F.3d 1321, 1329–30 (10th Cir.1999) (the

---

4. The job posting listed several "ranking factors," which included, *inter alia*: (1) thorough knowledge of a wide body of case law, and (2) thorough knowledge of DAB program goals, policies, and operations. (Pl.'s Ex. 1 at 3.)

5. Notably, Mr. Horvath's experience in the ADR division consisted of training from that division. (Pl.'s Ex. 2 [Horvath Decl.] ¶ 7.)

6. Mr. Horvath's statement that he should have been selected because he "ha[d] prior experience as a supervisor" because he was "left as the acting supervisor" in the absence of his supervisor (Def.'s Mot., Ex. I [Horvath Aff.] at 4), is inapposite. This experience was not in the CRD (Def.'s Mot., Ex. A [Horvath Dep.] at 117, 126), and most importantly, it was for Mr. Settle to evaluate the relative value of the candidates' managerial or supervisory experiences. *Stewart*, 352 F.3d at 429.

decision to hire plaintiff based on his supervisory experience "is not the kind of subjective evidence that, by itself, suggests pretext").

Here, Mr. Settle was choosing a managerial employee, and he was entitled to emphasize the need for initiative, a quality listed in the job description. (Def.'s Mot., Ex. F at 6 ("The incumbent must also be able to . . . exercise initiative").) He articulated his reasons for choosing Ms. Williams, noting that she was a "go-getter" and was "in front of the issues," anticipating action items before Mr. Settle broached them, and that she co-acted as division chief without extra pay.[7] (Def.'s Mot., Ex. H [EEOC Hearing Tr.] at 87–88; Def.'s Mot., Ex. V [Settle Aff.] at 3; Def.'s Reply, Ex. A [EEOC Hearing Tr.] at 155.) Unlike *Aka*, plaintiff was not a markedly better candidate than Ms. Williams such that Mr. Settle's reference to initiative could support an inference of masked discrimination. And perhaps more importantly, Mr. Settle relied on non-subjective factors as well, including Ms. Williams' managerial experience and lengthy experience in the relevant department. (Def.'s Mot., Ex. H [EEOC Hearing Tr.] at 88 ("I put all those qualities together").) Thus, there can be no argument that reliance on "initiative" constitutes proof of pretext.

In short, none of the supposed disparities cited by plaintiff amounts to a showing that he was *significantly* more qualified than Ms. Williams. At most, as in *Stewart*, "[t]his case is about a dispute over job qualifications," and any arguable distinctions cited by plaintiff are simply "too fine" a reed to support an inference of gender discrimination. *Stewart*, 352 F.3d at 429–30; *see also Fischbach*, 86 F.3d at 1183 ("Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates.").

## B. Statistical Evidence

In an effort to fill in the gaps, plaintiff offers statistical evidence as proof of pretext. (Pl.'s Opp. at 6–8; Pl's Stmt. at 14–15.) He has presented evidence showing that, at the time of the promotion decision in December 1997, only 27.3% (six out of twenty-two) of the DAB's employees were male (Pl.'s Ex. 15 [Report of Investigation ("ROI")] at 8), and that during that year, "there was a manifest imbalance for white males in both professional and administrative positions," (Pl.'s Ex. 18 [EEO 1997 Report] at 6). His evidence of the gender disparity at CRD includes a CRD telephone directory composed entirely of thirteen women (Pl.'s Ex. 16), nine of whom plaintiff claims are attorneys. (Pl.'s Stmt. at 14.) He also claims, without support, that "the Civil Remedies Division had at one time or the other employed a total of 16 staff attorneys, only two of which were males." (*Id.*) Finally, Mr. Horvath presents evidence that, while Mr. Settle was Chair of the DAB, 82.8% of the 29 DAB staff attorneys hired were women and only five (17.2%) were men. (Pl.'s Ex. 15[ROI] at 8.) By comparison, he offers a Census

---

7. Plaintiff's recollection of one comment by Ms. Williams when she declined to participate in a project—"Who needs the extra work?" (Pl.'s Ex. 2 [Horvath Decl.] ¶ 6)—simply does not suffice, without further explanation or context, to support an inference that Mr. Settle knew or should have known that she did not demonstrate initiative on the job. Further, plaintiff argues that Ms. Williams' seven months' experience as co-acting Chief of the CRD was not a credible basis for the promotion decision, as her "selection as co-acting chief was in itself a violation of Defendant's own policies." (Pl.'s Stmt. at 10–11.) Regardless of whether this is correct, it is irrelevant to the determination of whether Mr. Settle relied in good faith on Ms. Williams' experience and proven track record as to the co-acting Chief of the division.

Bureau report demonstrating that, in 1997, only 26.6% of the attorneys in the United States were women (and 73.4% were men). (Pl.'s Ex. 17.) Mr. Horvath argues that these statistics demonstrate that the "Departmental Appeals Board in general, and the Civil Remedies Division in particular, had a practice of favoring females over males in employing attorneys." (Pl.'s Opp. at 6.)

 Generally, in determining whether an employee has been the subject of discrimination, "the courts have consistently emphasized that the ultimate issue is the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001). However, statistical evidence may also be relevant in disparate treatment actions. *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. 1817; *see also Krodel v. Young*, 748 F.2d 701, 710 (D.C.Cir.1984); *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991). The D.C. Circuit has noted that while statistical evidence is crucial in claims involving disparate impact and classwide disparate treatment (so-called pattern or practice cases), in *individual* disparate treatment cases like this one, where "the ultimate issue is whether the *particular* plaintiff was the victim of an illegitimately motivated employment decision," statistical evidence is "less significant," but "certainly *relevant.*" *Krodel*, 748 F.2d at 710. Such evidence is "admissible and may be helpful, though ordinarily not dispositive." *Id.* (citing *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). The usefulness of statistics " 'depends on all of the surrounding facts and circumstances.' " *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)); *see also Bell v. Envtl. Protection Agency*, 232 F.3d 546, 553 (7th Cir.2000) ("statistical evidence is only one small part of a substantial web of evidence indicating pretext").

Defendant challenges the reliability and accuracy of plaintiff's statistics. For example, he notes that plaintiff's evidence that, at the time of the job vacancy announcement, all nine CRD attorneys were female consists of an undated phone list. (Def.'s Reply at 24–25.) While defendant's challenges may cast some doubt on the reliability of plaintiff's data, the far more important point is that plaintiff has failed to show how the proffered statistics support an inference of discrimination. First, evidence that merely indicates an under-representation of males in the workforce does not itself establish pretext. Plaintiff offers, as evidence of discrimination, a 1997 EEO report that noted a "manifest imbalance for white males in both professional and administrative positions" at DAB. (Pl.'s Ex. 18 at 6.) The Northern District of Illinois, in considering similar evidence found that, without more, statistics "indicating nothing more than an under-representation of Hispanic males in the at-issue jobs" were insufficient to demonstrate discrimination. *Caro v. Principi*, No. 00–7792, 2002 WL 31654939, at *6 (N.D.Ill. Nov. 22, 2002).[8] Likewise, plaintiff's observation regarding the gender distribution of the DAB workforce (Pl.'s Stmt. at 14), and his argument that the "lack of any male employees in the Civil Remedies Division at the time of the selection of

---

8. There, plaintiff offered studies showing a "manifest imbalance" and "conspicuous absence" of Hispanic males in "certain professional and supervisory positions" but without more, the court could not "follow [plaintiff] in taking the leap from raw statistical data indicating under-representation to the existence of 'obvious' discrimination." *Id.*

chief is itself evidence of pretext" (Pl.'s Opp. at 6–7) (citing *Bergene v. Salt River Project Agric. Improvement & Power Dist.,* 272 F.3d 1136 (9th Cir.2001)), amount to nothing more than further allegations of underrepresentation, which, even in *Bergene,* would not be enough to sustain a claim of discrimination. 272 F.3d at 1143 (the absence of any women supervisors, when combined with additional circumstantial evidence, established pretext).

Moreover, absent a showing of their significance, plaintiff's numbers are simply irrelevant. *See, e.g., Thomas v. Chao,* 2003 WL 21186036, 2003 WL 21186036, at *3 (D.C.Cir.2003) (the district court properly excluded from evidence "the list of employees identified by race and sex, and witness' observations about the race and sex of employees, in the absence of an expert who could testify that the alleged underrepresentation was statistically significant"). Here, statistical evidence could be relevant to showing discrimination if it demonstrated a disparity in gender composition between the pool of qualified applicants and those obtaining promotions to managerial positions within the DAB or CRD. But plaintiff fails to provide any information about the pool of available and qualified applicants for supervisory positions.[9] *Cf. Whitacre v. Davey,* 890 F.2d 1168, 1172 (D.C.Cir.1989) ("[w]ithout evidence of the pool of available and qualified applicants," the court could not determine whether the three individuals selected out of a total of twenty appointments was disproportionately too large or small). Plaintiff also fails to offer any measure of "the probability that the outcome of a statistical analysis would have occurred by chance." *Segar v. Smith,* 738 F.2d 1249, 1282 (D.C.Cir.1984).[10]

And, "comparisons must be made among comparable individuals." *Farrokhi v. Laura Ashley, Inc.,* 82 F.Supp.2d 1248, 1253 (D.N.M.1999); *see also Frazier,* 851 F.2d at 1454 (statistics were not reliable as evidence of discrimination because they made no distinction between employees in general and those eligible for promotion). Mr. Horvath's evidence showing the disproportionate hiring of female instead of male *staff* attorneys at DAB and CRD plainly relates to a group that is not comparable to supervisory employees. Moreover, the record indicates that Mr. Settle was not the selecting official for most staff-attorney hires (Def.'s Mot., Ex. V [Settle Aff.] at 3), and thus, one cannot conclude that these statistics represent a comparative analysis of similarly-situated individuals.

Plaintiff's citation to the Tenth Circuit's decision in *Brooks v. Barnhart* is to no avail. 78 Fed.Appx. 52, 2003 WL 22293796, at *1 (10th Cir.2003). In that case, plaintiff, a white male employee of the Social Security Administration, did not receive a promotion to team leader in his division. *Id.* In addition to arguing that he was more qualified than the selected candidate and that the interviewer habitually treated women more favorably than men, plaintiff demonstrated that no white male

9. In fact, defendant concedes that the pool of applicants seems to have consisted of more women than men. (Def.'s Reply, Ex. A [EEOC Hearing Tr.] at 106.) Similarly, plaintiff's comparison to Census Bureau statistics regarding the percentage of male attorneys in the entire nation is irrelevant because it does not take into account the relevant labor market or the pool of qualified applicants. *Frazier v. Consol. Rail Corp.,* 851 F.2d 1447, 1454 (D.C.Cir.1988).

10. Moreover, the sample used is probably too small to provide reliable statistical results. *See, e.g., Fallis,* 944 F.2d at 746 (group of nine employees who were members of a protected class was too small to provide reliable results).

had ever been promoted to the level of team leader in the relevant office and that none of the four team leader positions was held by white males. *Id.* 78 Fed.Appx. 52, 2003 WL 22293796 at *3–*6. Considering the totality of the plaintiff's evidence, the court concluded that pretext was a jury question, but it noted that plaintiff's statistical evidence "alone does not establish pretext or discrimination." *Id.* at 78 Fed. Appx. 52, 2003 WL 22293796 at *5–6.

Plaintiff has failed to demonstrate that a significantly smaller percentage of men were hired for supervisory positions in the CRD or DAB when compared to the number of men qualified for those positions. Indeed, he has failed to explain other relevant circumstantial evidence that weighs strongly against a finding of discrimination—namely, that the outgoing Chief of the Civil Remedies Division was a man whom Mr. Settle selected. (Def.'s Reply, Ex. C [Horvath Dep.] at 69.) Further, plaintiff fails to account for other attorney hires during Mr. Settle's tenure (including ALJs, Board Members, and Division Chiefs), some of whom were men. (*Id.* at 69, 81; Def.'s Reply, Ex. A [EEOC Hearing Tr.] at 108; Def.'s Mot., Ex. V [Settle Aff] at 3.)

For these reasons, plaintiff's reliance on statistics do not, as a matter of law or of fact, permit a jury to find that defendant's proffered nondiscriminatory reason was pretextual.

## CONCLUSION

For the reasons stated above, plaintiff has failed to show that defendant's proffered reason for failing to promote him was discriminatory. Accordingly, defendant's motion for summary judgment will be granted. A separate Order accompanies this Memorandum Opinion.

Upon consideration of the pleadings and the entire record herein and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [# 14] is **GRANTED**; and it is

**FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**. This is a final and appealable order.

**IT IS SO ORDERED.**