In re CHAMPION ENTERPRISES, INC., SECURITIES LITIGATION

**Joel Miller, Gary Kissiah, Simche Margulies, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Champion Enterprises, Inc., a Michigan corporation; and Walter Young, Defendants.**

Nos. 99–74231, 99–75162, 99–76206.

United States District Court, E.D. Michigan, Southern Division.

June 13, 2001.

E. Powell Miller, Mantesa, Miller and Mantesa, Troy, MI, Richard Acocelli, Weiss & Yourman, New York City, Stephen Wasinger, Wasinger, Kickham and Kohls, Royal Oak, MI, Aaron Brody, Julie Brody, Paul T. Curley, Stull, Stull & Brody, New York City, Lionel Z. Glancy, Peter A. Binkow, Law Offices of Lionel Z. Glancy, Los Angeles, CA, Leo W. Desmond, Palm Beach, CA, Brian P. Murray, Rabin & Peckel, New York City, for Plaintiffs.

Andrew J. McGuinness, Dykema Gossett, Ann Arbor, Timothy Nelson, Donna McDevitt, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Defendants.

*OPINION*

FEIKENS, District Judge.

**I. INTRODUCTION**

Plaintiffs sued Champion Enterprises and its Chief Executive Officer for securities fraud under sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated by the Secu-

rities Exchange Commission (SEC). Having previously held that plaintiffs' first amended complaint was insufficient under the pleading requirements of the Private Securities Litigation Reform Act ("Reform Act" or "the Act"), (see Opinion, Apr. 9, 2001) I now consider plaintiffs' motion for leave to amend. For the reasons that follow, I deny their motion for leave to amend and dismiss the case with prejudice.

## II. BACKGROUND

Plaintiffs' proposed pleading, the "Second amended supplemental complaint" is actually their *fourth* complaint in this action. Plaintiffs filed their initial complaints between August 26 and September 1, 1999.[1] The parties then stipulated to the filing of a consolidated amended complaint. Plaintiffs filed a first amendment on May 15, 2000. Defendants moved to dismiss the amended complaint on June 30, 2000. Plaintiffs filed their first motion for leave to amend (and their third proposed complaint) on December 1, 2000. On March 27, 2001 plaintiffs filed yet another proposed complaint.[2] I heard arguments on the motion for leave to amend on May 16, 2001.

## III. ANALYSIS

### A. Leave to amend should be denied because the Reform Act restricts Rule 15 of the Federal Rules of Civil Procedure.

■ The essential question raised by plaintiffs' motion is *not* whether amend-

ment should be allowed under Rule 15 of the Federal Rules of Civil Procedure, but rather, whether the Reform Act restricts Rule 15 in Securities Fraud cases.[3] I believe it must. This narrow but essential question is a matter of first impression not only in this circuit but throughout the federal court system.

If the Reform Act is read to mean that when a complaint is filed under the Reform Act, a judge must scrutinize the complaint and advise the pleader where the complaint is deficient, and then give the pleader an opportunity to amend the complaint, and when that is done, the judge must again, perhaps like a law school professor, advise the pleader that he or she has not passed the test, and if not, give the pleader another opportunity to meet the heightened pleading requirements, and even after that, still another opportunity, if the pleader requests it, then the Reform Act is meaningless. If this is the interpretation of the Act, then Rule 15 always trumps the plain requirements of the Act, and what Congress did when it passed this act over a presidential veto, means nothing.

During oral argument plaintiffs relied on two cases to support the proposition that leave to amend should be liberally granted in securities fraud cases, *Berger v. Ludwick*, 2000 WL 1262646 (N.D.Cal.2000), and *Chu v. Sabratek*, 100 F.Supp.2d 815 (N.D.Ill.2000). Neither of these cases addresses this question. These are merely

---

1. This case is a consolidation of three separate purported class actions, *Miller v. Champion*, (No. 99–74231), *Kissiah v. Champion* (No. 99–75162) and *Margulies v. Champion* (No. 99–76206). *See* Pre–Trial Order Number 1, 3/31/00.

2. For a more through recitation of the procedural history, see Opinion dated April 9, 2001.

3. Rule 15(a) states, "A party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

cases in which a court rules on whether or not to dismiss a third amended complaint. It would require a mind reader to fathom what, if anything, the judges in these cases contemplated in regard to this issue. Plaintiffs' contention that these cases must support the assertion that the Reform Act has no effect on Rule 15 is far more than a stretch; it is a pure flight of fancy.

In this case, it appears that plaintiffs are contending that since discovery procedures are not available to them, that a court must be lenient in allowing amendments to pleadings. Contending that Rule 15 permits this, they purposely seek to circumvent the Reform Act's strict requirements preventing discovery. But this is precisely the device that Congress intended to be used, i.e., to prevent suits in which a foundation for the suit can not be pleaded.

The stay of discovery and the heightened pleading standards are separate and distinct, yet complementary mechanisms. The stay of discovery operates to prevent plaintiffs with baseless claims from squeezing a nuisance settlement from an innocent defendant. The pleading requirement is more than simply a line the plaintiffs must cross to get to discovery; it is the heart of the Reform Act. This stringent requirement operates to discourage baseless suits altogether. It evinces Congress's acknowledgment of the burden an allegation of securities fraud places on the innocent defendant even without discovery. The Reform Act requires a uniform pleading standard; this standard is meaningless if

judges on a case-by-case basis grant leave to amend numerous times.

The Reform Act clearly states, "In any private action arising under this chapter, the court *shall,* on the motion of any defendant, dismiss the complaint if the [pleading] requirements . . . are not met." 15 U.S.C. § 78u–4(b)(3)(A). *See also,* 15 U.S.C. § 78u–4(b)(1) & (2) (setting out the pleading requirements). Plaintiffs fundamentally failed to meet these requirements. Now they want still another chance.[4]

The plain language of the Reform Act does not contemplate amending complaints; it *does* set a high standard of pleading which if not met results in a mandatory dismissal. The necessary goal of this plain, and strong language, is that it should be dismissed *with prejudice.* To conclude otherwise would be to abrogate the very purpose of the legislation.

As plaintiffs' counsel admitted, the purpose of the Reform Act is to prevent harassing strike suits filed the moment a company's stock price falls.[5] The Reform Act could not achieve this purpose if plaintiffs were allowed to amend and amend until they got it right. This is not only supported by the plain language of the Reform Act cited above, it is supported by the voluminous legislative history. "The objective: to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis. To

---

4. It is curious that if, as plaintiffs counsel so adamantly contend, the first amended complaint complied with the requirements of the Reform Act (noting that they filed their motion for leave to amend prior to my ruling that their complaint was inherently flawed), why they found it necessary to repeatedly amend their complaint. This seems to be a tacit admission of the complaint's failure. As plaintiffs' counsel has noted, these new complaints merely add facts to bolster their

claims; they do not change or add to the central allegations. It would have been a simple matter, therefore, merely to amend the pleadings afterwards to conform with the evidence.

5. Though plaintiffs vociferously protest that this is not an apt description of *their* case, it must be noted that this suit was filed soon after just such a drop in stock price.

provide a clearer statement of plaintiffs' claims and scope of the case. To encourage attorneys to use greater care in drafting their complaints. To make it easier for innocent defendants to get cases against them dismissed early in the process." Selected Bill Provisions of the Conference Report to H.R. 1058/S.240, 141 Cong. Rec. S19152 (daily ed. Dec. 22, 1995). "Under the Conference Agreement the complaint must set forth the facts supporting *each* of the alleged misstatements or omissions and must include facts that give rise to a 'strong inference' of scienter or intent. *If the complaint does not meet these requirements, the lawsuit will be terminated.*" *Id.* (emphasis added).

The legislative history contains assertions of both the supporters and the opponents of the Act that are quite revealing. The supporters hoped that the strict pleading requirements would bar frivolous and harassing lawsuits. "This should help weed out, at an early stage, lawsuits filed against innocent defendants." Statement of Senator Hatch, 141 Cong. Rec. S17966 (daily ed. Dec. 5, 1995). "This bill will hopefully curb this modern-day champerty, stop the vexatiousness and restore integrity to our securities laws by filtering out abusive, frivolous class action lawsuits that harm investors and only benefit the class action attorneys." Statement of Senator Domenici, 141 Cong. Rec. S17967 (daily ed. Dec. 5, 1995). "[T]ougher pleading standards ensure that the plaintiff's lawyer actually has a case before bringing a frivolous suit. Frivolous suits serve no purpose. They waste everyone's time and money. Nobody benefits—not plaintiffs and defendants involved in litigation that will go nowhere despite countless amounts of time and money expended, not the court system which gets clogged, and not future plaintiffs who can't get in the courthouse door because it is so jammed." Statement

of Rep. Ganske, 141 Cong. Rec. H15220 (daily ed. Dec. 20, 1995).

Likewise, opponents feared that these same requirements would bar the door to meritorious claims from wronged investors. "This is a standard more stringent than the Federal Rules of Civil Procedure." Statement of Senator Sarbanes, 141 Cong. Rec. S19038 (daily ed. Dec. 21, 1995). "The Conference Report establishes almost insurmountable hurdles in the form of pleading requirements as a barrier to federal court." Letter of John Sexton to President Clinton, 141 Cong. Rec. S19038, Ex. 1 (daily ed. Dec. 21 1995). The Reform Act "erect[s] a higher barrier to bringing suit than any now existing—one so high that even the most aggrieved investors with the most painful losses may get tossed out of court before they have a chance to prove their case." Veto message of President Clinton, 141 Cong. Rec. S19035 (daily ed. Dec. 21 1995). These hopes and fears would be unfounded if any improperly pleaded complaint could repeatedly be amended. The pleading requirements would merely be a technical formality which could be cured by amendment.

**B. Leave to amend in this case should be denied because the proposed amendments are futile.**

■ Leave to amend should be denied because amendment here would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)(explaining that it is within the court's discretion to deny leave to amend for undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to non-moving party or futility of amendment). This proposed complaint, plaintiffs' fourth attempt, still lacks compliance with the

requirements of the Reform Act.[6] *See Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir.1980) (holding that a court may deny leave to amend where the proposed amended complaint would not survive a motion to dismiss); *see also*, 15 U.S.C. § 78u–4(b)(3)(A) (mandating dismissal of any complaint failing to meet the pleading requirements).

The Reform Act requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading... [and] with respect to *each* act or omission...state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(1)—(2) (emphasis added). Each allegation, therefore, must detail the who, what, where, when, why and how of the alleged misleading statement. Plaintiffs' first amended complaint failed to do this. *See* Opinion, Apr. 9, 2001. Plaintiffs' proposed amended complaint fails to do this as well.

It seems that plaintiffs' counsel, who have dealt with securities fraud cases in the past, would accept the mandate of the Reform Act and state as to *each* of defendants' statements *why* the statements are false or misleading *and* that they were made with the requisite scienter. This they cannot or refuse to do. This is not merely failure to use the magic words of falsity or recklessness. They must state facts with particularity as to the false or misleading nature of a statement or a document or an utterance *and* the state of mind with which it was made. Their failure or refusal to do that, and instead make their accusations in a summary form rather than in specific allegations, leads to the inevitable conclusion that they *cannot* do so.

Plaintiffs' proposed amended complaint is basically a cut-and-paste job, repeating, word-for-word allegations from the old complaint with few changes. Plaintiffs add approximately ten pages of supposed newly discovered relevant facts. The significant change is in the section of the complaint entitled "Summary of Action." *See* Compl. ¶¶ 1–4, 1–3.[7] Though these paragraphs set forth alleged new facts, these allegations are not tied to any specific misstatements or omissions. Once again, plaintiffs leave it to me to put the pieces together.[8]

Plaintiffs do this in pages 34–38 of the proposed amended complaint. Though they state that the above referenced allegations contained misleading statements, nowhere do they allege the requisite scienter. They merely throw out additional unexplained facts. The Reform Act clearly requires allegation of scienter. They make no such allegations.

---

6. Even though I did not hear oral argument on the sufficiency of the proposed amendment, this issue was well briefed and therefore oral argument is not necessary.

7. In their cutting and pasting, plaintiffs seem to have misnumbered their complaint so that after paragraphs 1–4 plaintiffs begin again with the number 1.

8. During oral argument plaintiffs' counsel repeatedly referred to a chart submitted in their Submission Concerning the Effect of The Statutory Safe Harbor.... Counsel claimed that this chart adequately matches each alleged misstatement or omission to the facts and allegations required by the Reform Act. First, this chart merely address ten allegations, those that were identified as possibly forward looking (and later determined to be so)—it does not chart the entire complaint. Second, even if it did match up each misstatement to the relevant particularized facts, the chart is not in the complaint and the mere existence of the chart in one of *many* submissions cannot cure the complaint's defects.

The remainder of the complaint remains unchanged.

Plaintiffs, with surprising candor, have submitted cases that show they must understand the Reform Act's mandate and the necessary conclusion I must draw. In *In Re: Staffmark Inc. Securities Litigation* the court reviewed a complaint much like the plaintiffs':

> [T]here is merit in defendant's contentions that the Complaint sets out its allegations in a somewhat rambling format which makes review difficult. The portions of the Complaint which outline allegedly false and misleading statements made during the Class Period are lumped together into groups of quotes and excerpts from reports several paragraphs long, only then setting out the alleged facts which purportedly disprove them. In the process it is sometimes left to the reader to ascertain which "fact" disproves a referenced statement, which obviously lessens the force of Plaintiffs' allegations.

123 F.Supp.2d 1160, 1174 (E.D.Ark.2000). Though initially the court denied the defendant's motion to dismiss, upon reconsideration, the court realized why this type of complaint cannot comply with the Reform Act's requirements:

> In essence, the Court determined that it could not say for sure the Plaintiffs failed to meet the exacting standard of pleading set out by the PSLRA. The PSLRA, though requires a greater showing than this. It requires a court to find conclusively that a plaintiff has stated a claim, with particularity, and that said stated claim must raise a strong inference of scienter. It is not sufficient for a plaintiff to state a claim which raises some question of scienter,

or if a plaintiff states facts which could possibly make out a scienter claim in the future. Indeed, the PSLRA was intended to stop such pleading....After careful review of the submissions of the Plaintiffs and the Defendants, the Court concludes that it misapplied the law to the facts in its [previous] Opinion....The Plaintiffs' complaint does not state with sufficient particularity facts which give rise to a strong inference that the Defendants acted with the requisite scienter in this Circuit.

*Id.* at 1177. The court then dismissed the complaint in its entirety.

The same result occurred in the U.S. District Court for the Northern District in Illinois. "The Court finds dismissal of the present complaint appropriate because the Plaintiffs fail to sufficiently allege scienter with respect to either of the alleged misrepresentations or omissions." *In Re Allied Products Corp., Inc. Sec. Lit.*, 2000 WL 1738333 *2 (N.D.Ill.2000). Again, the description bears striking similarity to plaintiffs' previous and current attempts. "The bottom line is that Plaintiffs fail to link each alleged fraudulent statement with the particular facts that would indicate that the Defendants knew better at the time the statement was made. The lack of particularity...is even more critical here where other traditional indicators of contemporaneous knowledge, such as unusual stock activity by the Defendants, are missing." *Id.* at *4. [9]

Plaintiff's suggest, in the alternative, that even if this proposed amended complaint fails to meet the Reform Act's requirements, they should be allowed to try once more. "Due to an unusual sequence of events, plaintiffs filed the instant motion

---

9. While here the court did not dismiss with prejudice, this does not support plaintiffs' contention that the case law therefore supports liberal amendments in securities fraud cases. To assert such a proposition is to put words into the court's mouth.

for leave to file a 'Second Amended and Supplemental Consolidated Class Action Complaint' ('SASC') prior to the issuance of this Court's ruling on defendants' Motion to Dismiss plaintiffs' Consolidated Amended Complaint ('CAC'). Consequently, in drafting their amended pleadings, Plaintiffs did not yet have the benefit of this Court's guidance concerning any pleading defects contained in the CAC....[P]laintiffs should be granted leave to file an amended pleading which conforms to the pleading requirements set forth in this Court's April 9, 2001 Opinion." P's Supp. Mem. at 1. This argument has no merit. Plaintiffs have failed to get it right four times. I doubt that, even given the guidance of my Opinion, they would be able to succeed on their fifth try (particularly since it is clear from their briefs that they fundamentally misunderstand the Reform Act). They have not alleged facts from which scienter can be inferred. It is not a judge's role to re-write plaintiffs' complaint for them.

The Sixth Circuit's recent ruling in *Helwig v. Vencor* serves to support my denial of plaintiffs' motion for leave to amend. "[T]he 'strong inference' requirement means that plaintiffs are entitled only to the most plausible of competing inferences." *Helwig v. Vencor*, 251 F.3d 540, 553 (6th Cir.2001). Because plaintiffs failed to draft their complaint in a way that enables a judge to link facts with specific statements, my analysis cannot reach the issue of whether the facts pleaded give rise to a strong inference that defendants acted with the requisite scienter. That being said, analyzing the gravamen of plaintiffs' complaint, it is not even a *plausible* inference that the defendants pumped millions of dollars into Ted Parker Homes all the while *knowing* that Parker Homes was going to go bankrupt. That truly would be a classic case of the defendants falling on their own sword.

## IV. CONCLUSION

It is clear from the above exercise in futility why the Reform Act can not be interpreted to allow repeated amendment. What plaintiffs seek to do, by amending their complaint yet again, is to make an end run around the requirements of the Reform Act. If leave to amend complaints alleging securities fraud is liberally granted, then the Reform Act has no vitality. This is exactly what Congress intended: to implement a strategy to stem the flow of baseless strike suits that flooded courtrooms throughout the nation. To liberally allow amendments in securities fraud cases would eviscerate the Reform Act. I therefore DENY plaintiffs' motion for leave to amend and DISMISS the case in its entirety and WITH PREJUDICE. An order so providing is filed contemporaneous with this opinion.

## ORDER DISMISSING PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT WITH PREJUDICE AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND

In accordance with the opinion dated April 9, 2001, Plaintiffs' First Amended Consolidated Class Action Complaint is dismissed in its entirety and with prejudice.

In accordance with the opinion dated June 13, 2001, Plaintiffs' Motion for Leave to File Second Amended and Supplemental Consolidated Class Action Complaint is denied.

IT IS SO ORDERED.