# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 8, 2007          Decided July 27, 2007

No. 06-7104

MONICA BELIZAN,
AND ALL OTHERS SIMILARLY SITUATED AND
WILLIAM PRATHER, DR., AS TRUSTEE FOR THE AVON
MEDICAL GROUP PC EMPLOYEES PROFIT SHARING PLAN &
TRUST, AND AS TRUSTEE FOR THE JUDITH ANN PRATHER
REVOCABLE TRUST,
APPELLANTS

v.

SIMON HERSHON, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01490)

*Donald J. Enright* argued the cause for appellants. With him on the briefs were *Burton H. Finkelstein*, *Tracy D. Rezvani*, and *Benjamin J. Weir*.

*Michael L. Martinez* argued the cause and filed the brief for appellee Radin Glass & Co, LLP.

*Alexander Maltas*, *David M. Brodsky*, *Jeff G. Hammel*, and

*Donna G. Patel* were on the brief for appellee CIBC World Markets Corporation. *DeMaurice F. Smith* entered an appearance.

Before: GINSBURG, *Chief Judge*, and GARLAND and BROWN, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:  An uncertified class of plaintiffs appeals an order of the district court dismissing with prejudice their claims against Radin Glass & Co. and CIBC World Markets Corp. under §§ 11 and 12(a)(2) of the Securities Act of 1933 and under § 10(b) of the Securities Exchange Act of 1934. On the plaintiffs' previous appeal we remanded the case for the district court "to enter a new order either dismissing without prejudice or explaining its dismissal with prejudice in a manner consistent with [our] opinion." *Belizan v. Hershon*, 434 F.3d 579, 584 (D.C. Cir. 2006) (*Belizan II*).  On remand, the district court once again dismissed all the plaintiffs' claims with prejudice.  *In re Interbank Funding Corp. Sec. Litig.*, 432 F. Supp. 2d 51, 57 (D.D.C. 2006) (*Belizan III*).

We hold the district court did not abuse its discretion by dismissing the plaintiffs' § 11 claim with prejudice because their two unsuccessful attempts to replead the claim adequately demonstrated, as the district court found, that they could not plead additional facts consistent with, but sufficient to cure the deficiency in, their original pleadings.  The district court did not, however, adequately explain why the plaintiffs' attempt in their Pre-Appeal Draft Complaint, submitted with a motion to reconsider the first dismissal of their complaint, was inadequate to demonstrate they could cure the deficiencies in pleading their §§ 10(b) and 12(a)(2) claims.  Accordingly, we vacate the order in part and again remand the question of prejudice for

clarification with respect to those two claims.

## I. Background

The plaintiffs allege they purchased debt securities from InterBank Funding Corp. (IBF) and its subsidiaries between 1997 and 2002, including the class period of July 26, 1999 to June 7, 2002. IBF, at least a majority of which was owned by Simon Hershon, had formed several investment funds with the purpose of purchasing and restructuring or rehabilitating underperforming loans. The plaintiffs claim IBF's funds were actually part of a "Ponzi scheme," wherein proceeds from successive securities offerings were used to make interest payments to those who had invested in prior offerings. CIBC World Markets Corp. sold securities to the plaintiffs and Radin Glass & Co. served as IBF's independent auditor for IBF's Fund VII, now called Collateralized Finance Corporation.

The plaintiffs' suits against Hershon, Radin, CIBC, and others were consolidated, after which they filed a Consolidated Amended Complaint and settled their claims against Hershon. In the Consolidated Amended Complaint, the plaintiffs alleged Radin and CIBC had disseminated materially false and misleading information about IBF's funds and engaged in a scheme to defraud investors, in violation of § 10(b) of the '34 Act, 15 U.S.C. § 78j(b), and of Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. In addition, they claimed Radin, by attesting that IBF's financial statements complied with Generally Accepted Accounting Principles (GAAP) when, in fact, the statements were materially false or misleading, had violated § 11 of the '33 Act, 15 U.S.C. § 77k. Finally, they alleged CIBC had violated the prospectus delivery requirements of § 12(a)(1) and (2) of the '33 Act, 15 U.S.C. § 77*l*(a)(1)-(2), when it sold IBF's securities to investors.

Radin and CIBC each moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. After a hearing, the district court granted the defendants' motions to dismiss. *See In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84, 96 (D.D.C. 2004) (*Belizan I*). With respect to the alleged violations of § 10(b), the court held the plaintiffs had failed adequately to: (1) plead scienter; (2) allege their claims with the specificity required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA), 104 Pub. L. No. § 101, 109 Stat. 737, 743, 15 U.S.C. § 78u-4; and (3) plead causation. 329 F. Supp. 2d at 89-94. The district court also held they failed properly to plead a violation of § 11; failed to plead with specificity that their § 12(a)(1) was timely; and lacked standing to bring the § 12(a)(2) claim. *Id.* at 94-96.

The district court also held the plaintiffs would not be allowed to amend their complaint, which it dismissed "with prejudice." *Id.* at 96. The court explained that counsel's references at the hearing to the possibility of amending the complaint did not "amount to formal motions for leave to amend" and that even if they did, the PSLRA "counsel[s] restraint in granting leave to amend." *Id.* As for the dismissal being with prejudice, the court cited *In re Champion Enterprises Inc. Securities Litigation*, 145 F. Supp. 2d 871, 873 (E.D. Mich. 2001), for the proposition the PSLRA "set[s] a high standard of pleading which if not met results in a mandatory dismissal .... *with prejudice*." *Id.*

The plaintiffs filed a motion under Federal Rule of Civil Procedure 59(e) seeking reconsideration insofar as the court had not permitted them leave to amend the complaint and dismissed their claims with prejudice. With their motion, they submitted the Pre-Appeal Draft Complaint. The district court denied reconsideration and stated that the plaintiffs' revised complaint

"share[d] important failings with [their] earlier effort."

On the plaintiffs' first appeal, we held the district court did not err in determining counsel's oral reference to the possibility of amending the Consolidated Amended Complaint was not a proper motion for leave to amend. *Belizan II*, 434 F.3d at 582-83. We vacated the order of dismissal with prejudice, however, and remanded the case for the district court "to exercise its discretion under *Firestone*," which required the court to "determine whether the allegation of other facts consistent with the challenged pleading could not possibly meet the heightened pleading requirements of the PSLRA." *Id.* at 584 (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

On remand, the district court once again dismissed the plaintiffs' claims with prejudice, holding they "could not possibly have alleged other facts consistent with the challenged complaint sufficient to make out a proper cause of action against CIBC or Radin." *Belizan III*, 432 F. Supp. 2d at 57. The district court also denied as moot the plaintiffs' post-remand motion to amend, to which their Post-Remand Draft Complaint was attached. *Id.*

## II. Analysis

The parties dispute whether the district court abused its discretion when it denied their post-remand motion to amend and looked to the Pre-Appeal Draft Complaint but not the Post-Remand Draft Complaint and, if not, then whether the new allegations in the Pre-Appeal Draft Complaint indicated the plaintiffs possibly could have cured the deficiencies of their Consolidated Amended Complaint.

A. Post-Remand Motion to Amend and Draft Complaint

Invoking the policy of Federal Rule of Civil Procedure 15(a) that leave to amend is liberally to be granted, the plaintiffs argue that the district court abused its discretion (1) in denying their post-remand motion for leave to amend their complaint and (2) in determining whether to dismiss their claims with prejudice by looking solely to the Pre-Appeal Draft Complaint, rather than evaluating their Post-Remand Draft Complaint. CIBC and Radin argue the district court correctly denied the plaintiffs' post-remand motion to amend and ignored the allegations in the Post-Remand Draft Complaint because the district court "has no power or authority to deviate from [this court's] mandate," *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596 (D.C. Cir. 2001), which instructed the district court to "enter a new order either dismissing without prejudice or explaining its dismissal with prejudice in a manner consistent with [our] opinion," *Belizan II*, 434 F.3d at 584.

In our view, it would not have been inconsistent with our mandate for the district court to have considered the Post-Remand Draft Complaint in order to determine whether the plaintiffs could cure the deficiencies of their previous efforts, nor would the court have erred in granting the plaintiffs' post-remand motion to amend. Nothing in the mandate required the court to do so, however, and the court certainly did not abuse its discretion by looking solely at the record as it stood before the first appeal or by denying the post-remand motion to amend. *Cf. Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977) ("When a plaintiff seeks to file an amended complaint this tardily [on remand to district court], it is within the sound discretion of the district court, in consideration of the potential prejudice to the other party and the interest in eventual resolution of litigation, to deny leave to amend").

B.  Section 10

Section 10(b) of the '34 Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance."  Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated to implement § 10(b), makes it unlawful

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates ... as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The PSLRA requires a plaintiff suing for securities fraud to state with particularity both the facts constituting the alleged violation and facts supporting a "strong inference" concerning the requisite scienter, 15 U.S.C. § 78u-4(b)(1)-(2), that is, the defendant's intention "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n.12 (1976). On remand, the district court concluded the plaintiffs could not possibly cure the defects in their § 10(b) claim by amendment because in the Pre-Appeal Draft Complaint they once again "failed to 'state with particularity facts giving rise to a strong inference that the defendant[s] acted with [scienter]'" when the defendants made the allegedly false or misleading statements or omissions. *Belizan III*, 432 F. Supp. 2d at 56 (citing 15 U.S.C. § 78u-4(b)(2)).  The Supreme Court recently held that the "strong inference" of scienter required to make out a § 10(b)

claim "must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504-05 (2007).

In *Belizan I*, the district court had dismissed the Consolidated Amended Complaint on the ground that the plaintiffs had not raised a strong inference of scienter by, for example, alleging a defendant had "'failed to check information [it] had a duty to monitor,'" 329 F. Supp. 2d at 91 (quoting *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000)), and by "identify[ing] specific transactions that CIBC or Radin elected not to investigate .... Nor [did] they specifically allege that CIBC and Radin had access to particular pieces of information that would have revealed IBF's allegedly fraudulent and GAAP-violating inter-fund transfers." *Id.*

In their Pre-Appeal Draft Complaint, the plaintiffs attempted, and may well have managed, to breathe life into their § 10(b) claim by adding new allegations that Radin and CIBC acted recklessly. The plaintiffs had already alleged in their Consolidated Amended Complaint:

> CIBC ... informed potential and actual purchasers of IBF securities ... [that CIBC] had conducted extensive investigations into the business, operations, business strategy, prospects, financial condition, and accounting and management control systems of IBF.

Consolidated Amended Compl. ¶ 96; Pre-Appeal Draft Compl. ¶ 112. This, coupled with the plaintiffs' allegation that CIBC became aware in January 2002 that the SEC was investigating IBF, Consolidated Amended Compl. ¶ 31; Pre-Appeal Draft Compl. ¶ 33, appears sufficient to allege that CIBC knew or should have known of any misleading disclosure made as of that

time.

In the Pre-Appeal Draft Complaint, the plaintiffs added the allegation that Radin had said in each cover letter accompanying its audit report:

> In our opinion, the financial statements ... present fairly, in all material respects, the financial position of IBF Special Purpose Corporation VII as of December 31, 1999 and the results of its operations and its cash flows for the period May 10, 1999 (inception) to December 31, 1999 in conformity with the [GAAP].

¶ 73.  In our view, this shows Radin had audited IBF's Fund VII during the class period and therefore may show it knew or should have known of any misleading disclosure in IBF's financial documents regarding that fund.

The Plaintiffs also added the allegation that CIBC and Radin knew or should have known of a specific misleading disclosure in view of their claim to have reviewed IBF's financial documents.  They point to an October 2001 private placement memorandum for Fund VII that allegedly stated:

> Of the loans made or acquired through June 30, 2001, loans and participations in the amount of $37.2 million of principal have been repaid, sold to IBF or affiliated companies, or refinanced and $42.1 million of principal remains outstanding under 26 commercial loans and participations.  Of the $37.2 million amount, $14.1 million was prepaid by borrowers, $14.3 million was purchased by affiliated funds, $2.4 million was purchased by IBF, and the balance was refinanced.

Pre-Appeal Draft Compl. ¶¶ 69, 105.  Based upon these data, the

plaintiffs alleged that "over fifty percent of the repaid loans and participations were either purchased by affiliated funds or by IBF."[*] *Id.* ¶ 105. Plaintiffs further alleged Radin and CIBC, upon learning this, had a duty to investigate IBF's practices, *id.* ¶¶ 77-78, 113-15, and their failure to do so was reckless, *id.* ¶¶ 78, 114.

These allegations are not of the kind the district court rejected in *Belizan I*; they do not rely upon a bare inference that Radin and CIBC must have known the true nature of IBF's financial practices. Instead, they "specifically allege that CIBC and Radin had access to particular pieces of information that would have revealed IBF's allegedly fraudulent and GAAP-violating inter-fund transfers," which the district court suggested in *Belizan I* would be sufficient. *See* 329 F. Supp. 2d at 91. Nevertheless, because the district court in *Belizan I* did not "[have] the opportunity to consider the matter in light of the prescriptions," 127 S. Ct. at 2513, announced by the Supreme Court in *Tellabs*, we remand this case for the district court to determine whether the inference that Radin and CIBC acted recklessly in the face of these allegations is, as required by *Tellabs*, "at least as compelling as any opposing inference of nonfraudulent intent." 127 S. Ct. at 2505.

C. Section 11

Under § 11 of the '33 Act, an "accountant ... whose profession gives authority to a statement made by him, who has with his consent been named as having ... prepared or certified any report or valuation which is used in connection with [a] registration statement," may be held liable for the loss incurred

---

[*] We calculate that IBF and its affiliates bought about 45% (($ 2.4 million + $14.3 million)/ $37.2 million) of the principal of loans and participations repaid or sold — still a sizeable portion.

by one who acquired the security for which the statement was issued if such statement "contained an untrue statement of a material fact or omitted to state a material fact ... necessary to make the statements therein not misleading." In the Consolidated Amended Complaint the plaintiffs alleged Radin violated § 11 when it "signed the Registration Statements and/or certified the financial statements therein as IBF's outside auditors."

Notwithstanding the plaintiffs' use of the plural, the only fund IBF offered publicly, and therefore the only one for which a registration statement was filed, was Fund VI. In *Belizan I* the district court found the plaintiffs had failed to allege that Fund VI made any loans to or acquired any non-performing loans from other IBF entities on Radin's watch, and rejected their argument that the "'Fund VI public offerings were actually part of an integrated offering involving all of the IBF funds.'" *Belizan I*, 329 F. Supp. 2d at 94. On remand, the district court found, without explanation, "the [pre-appeal] draft complaint in no way cured the infirmities that doomed the claims against CIBC and Radin under section[] 11." *Belizan III*, 432 F. Supp. 2d at 56-57.

In their Consolidated Amended Complaint, the plaintiffs alleged Radin had violated § 11 by attesting that IBF's "financial reports" complied with GAAP when, in fact, the statements were materially false or misleading. On appeal, the plaintiffs argue four paragraphs in the Pre-Appeal Draft Complaint show they could, if given the opportunity, salvage their § 11 claim.

This argument fails because it depends upon allegations in the Pre-Appeal Draft Complaint identical to those previously made in the Consolidated Amended Complaint, the adjudicated insufficiency of which the plaintiffs did not dispute in their first

appeal and therefore became the law of the case. *See Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 298 (D.C. Cir. 1993) (taking it "as a given for purposes of [the] appeal" that appellants admitted their complaint failed to state a claim when they had not "mount[ed] any serious attempt to defend [its] sufficiency"); *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1089-90 (D.C. Cir. 1984) ("Adherence to the rule that a party waives a contention that could have been but was not raised on a prior appeal is, of course, necessary to the orderly conduct of litigation. Failure to follow this rule would lead to the bizarre result ... that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.") (internal quotation marks, citations, and alterations omitted). Accordingly, although troubled by the conclusory nature of the district court's decision, we are constrained to affirm the judgment with respect to the § 11 claim.

D.  Section 12

Under § 12(a)(2) of the '33 Act, a person who "offers or sells a security ... by means of a prospectus ... which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements ... not misleading" is liable for losses suffered as a result by the buyers of the security. In the Consolidated Amended Complaint, the plaintiffs alleged CIBC had violated the prospectus delivery requirements of § 12(a)(2) by soliciting plaintiffs to buy securities using materials that "contained untrue statements of material facts, omitted other facts necessary to make the statements not misleading, and concealed and failed to disclose material facts." The district court initially dismissed the § 12(a)(2) claim for want of standing to sue because no plaintiff alleged he had been offered or sold securities by CIBC in a public offering. 329 F. Supp. 2d at 95. Alternatively, the

district court held the § 12(a)(2) claim fell short because the plaintiffs had failed to plead with specificity facts indicating the claim had been filed within the time limit set in § 13 of the '33 Act, 15 U.S.C. § 77m. *Belizan I*, 329 F. Supp. 2d at 95 (citing *Davidson v. Wilson*, 973 F.2d 1391, 1402 n.8 (8th Cir. 1992) (holding compliance with § 13 must be pleaded with specificity because timeliness is a substantive requirement of a § 12(a)(2) claim)). Section 13 limits liability for a violation of § 12(a)(2) to a claim brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."

In the Pre-Appeal Draft Complaint, the plaintiffs attempted to cure their lack of standing; newly added anonymous plaintiff John Doe alleged he "purchased Fund VI bonds pursuant to the registration statements filed with the SEC from 1999 through 2001." Pre-Appeal Draft Compl. ¶ 9. To establish the timeliness of their claim, the plaintiffs again alleged "Defendants' fraud was first revealed by the initiation of the SEC's action against Defendant Hershon and others on July 23, 2002" and newly alleged the "Plaintiffs initiated their claims against Defendant CIBC on June 23, 2003." *Id.* at ¶ 3.

The district court incorporated into its opinion on remand its ruling on the plaintiffs' motion for reconsideration of their § 12 claim. 432 F. Supp. 2d at 56. The court stated without elaboration that the Pre-Appeal Draft Complaint shared "important failings" with the Consolidated Amended Complaint; from its opinion, however, we cannot discern what failings it shares and why the plaintiffs could not cure them. It is not sufficient for the district court simply to wave away the plaintiffs' attempt to cure the deficiencies the court had found in their original § 12(a)(2) claim with the bare conclusion that the revised "draft complaint in no way cured the infirmities that doomed" the Consolidated Amended Complaint. Thus, the

district court abused its discretion by dismissing the plaintiffs' § 12(a)(2) claim without explaining why the addition of a "John Doe" plaintiff and the dates he purchased Fund VI securities did not establish at least one plaintiff's standing and sufficiently plead the facts necessary to satisfy the statute of limitations. We therefore remand the case for the district court to reconsider whether the plaintiffs did or could perfect their § 12(a)(2) claim, and if not, to explain why.

## III.  Conclusion

We conclude the district court did not abuse its discretion in dismissing the plaintiffs' § 11 claim with prejudice because the plaintiffs merely offered to reallege the allegations of the Consolidated Amended Complaint, the insufficiency of which is the law of the case.  We hold the district court did abuse its discretion by dismissing with prejudice the § 10(b) claim, which the plaintiffs attempted to cure with new and more specific allegations indicating that CIBC and Radin acted recklessly by failing to check facts each had a duty to monitor, and the § 12(a)(2) claim against CIBC, for which the plaintiffs added allegations meant to establish their standing and demonstrate the timeliness of their claim.  Accordingly, we remand the case for the district court to evaluate the new allegations the plaintiffs offered to perfect their §§ 10(b) and 12 claims and to determine whether the plaintiffs could "possibly cure the deficienc[ies]" in those two claims.

*So ordered.*