# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 24, 2010　　　Decided December 28, 2010

No. 09-7167

IN RE: INTERBANK FUNDING CORP SECURITIES LITIGATION,

MONICA BELIZAN, AND ALL OTHERS SIMILARLY SITUATED, ET
AL.,
APPELLANTS

v.

RADIN GLASS & CO, LLP,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:02-cv-01490)

　　　*Michael G. McLellan* argued the cause for appellants. With
him on the briefs were *Burton H. Finkelstein*, *Donald J. Enright*,
and *Tracy D. Rezvani*.

　　　*Michael L. Martinez* argued the cause and filed the brief for
appellee.

　　　Before: KAVANAUGH, *Circuit Judge*, EDWARDS and
SILBERMAN, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2002, plaintiff-appellant Monica Belizan, on behalf of herself and a class of similarly situated persons, filed a complaint against, *inter alia*, defendant-appellee Radin Glass & Co., LLP ("Radin"). Belizan alleged that she purchased securities of InterBank Funding Corporation ("Interbank"), and, in doing so, relied on materially false misrepresentations and omissions by Radin, Interbank's auditor, made in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. After Belizan consolidated her action with a related action in 2003, the District Court granted a motion to dismiss filed by Radin and then-defendant CIBC World Markets Corp. ("CIBC"). *In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84 (D.D.C. 2004). This court vacated the District Court's order of dismissal, because the District Court failed to adequately explain why it dismissed the appellants' complaint with prejudice. *Belizan v. Hershon* ("*Belizan I*"), 434 F.3d 579 (D.C. Cir. 2006). On remand, the District Court again dismissed the appellants' suit, because there was no indication that appellants would be able to cure the deficiencies in their pleadings. *In re Interbank Funding Corp. Sec. Litig.*, 432 F. Supp. 2d 51, 55 (D.D.C. 2006). On appeal, this court again vacated in part and remanded the section 10(b) and Rule 10b-5 claims for the District Court to re-evaluate the appellants' allegations of scienter. *Belizan v. Hershon* ("*Belizan II*"), 495 F.3d 686, 691-92 (D.C. Cir. 2007).

Before the District Court for the third time, appellants moved for leave to amend their complaint against Radin pursuant to FED. R. CIV. P. 15(a). The District Court denied the motion and again dismissed appellants' suit with prejudice. *In re Interbank Funding Corp. Sec. Litig.*, 668 F. Supp. 2d 44

(D.D.C. 2009). The District Court held that the appellants' proposed amendment was futile because the draft complaint failed to adequately plead the reliance element of a securities fraud claim – *i.e.*, "the causal link between the defendant's misconduct and the plaintiff[s'] decision to buy . . . securities," *Emergent Capital Inv. Mgmt., LLC. v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). Appellants argue that the District Court erred in its decision not to apply the "*Affiliated Ute* presumption" of reliance. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972). Had the District Court found the presumption applicable, appellants' amended complaint would have properly pled all elements of a cause of action under SEC Rule 10b-5.

We agree with the District Court that the *Affiliated Ute* presumption is inapplicable here. In *Affiliated Ute*, the Supreme Court applied a presumption of reliance in a situation "involving primarily a failure to disclose." 406 U.S. at 153. Appellants contend that because their action primarily relies on Radin's alleged *omissions*, they should benefit from a presumption of reliance. We disagree. The complaint is focused on appellants' claim that Interbank's financial statements, which Radin attested were accurate and in accord with Generally Accepted Accounting Principles ("GAAP"), did not reveal Interbank's alleged "Ponzi scheme." Thus, the gravamen of the appellants' complaint is that, by certifying Interbank's materially false financial statements, Radin affirmatively *misrepresented* Interbank's financial situation. Because, as appellants concede, the *Affiliated Ute* presumption of reliance does not apply to affirmative misrepresentations, appellants' proposed amendment to their complaint would be futile. We therefore affirm the District Court's order denying appellants' motion for leave to amend.

## I. BACKGROUND

"[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004). Consequently "our review in this instance is, for practical purposes, identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006). On review of a motion to dismiss, we "treat the complaint's factual allegations as true . . . and must grant [appellants] the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (ellipsis in original) (citation and quotation omitted). Therefore, the facts recited below are drawn from appellants' proposed amended complaint.

Interbank was formed in 1996 with the purpose of buying distressed loans and restructuring or rehabilitating those loans for a profit. Proposed Second Consolidated Am. Class Action Compl. for Violation of the Fed. Securities Laws ¶ 26 ("Second Amended Complaint"), No. 1:02-cv-01490 (D.D.C. Oct. 20, 2008), *reprinted in* Appendix ("App.") 62. Between 1996 and 1999, Interbank formed a succession of wholly-owned funds that offered private placement notes to investors. *Id.* ¶ 19, App. 60. These were five-year notes that bore interest between eight and twelve percent annually, plus a share of the fund's gross profits. *Id.* Shortly after the first fund commenced operations, Interbank established a "related party transaction policy," under which Interbank itself purchased a loan from a fund if there was a question about whether the loan would be collected before the fund's scheduled liquidation. *Id.* ¶ 42, App. 65-66. With respect to these transactions, Interbank paid the fund the full amount outstanding on an acquired loan even if the loan was uncollectable. *Id.* ¶ 43, App. 66. As a result, the fact that a loan

had gone bad was not disclosed to prospective investors to the Interbank fund that sold the loan, *id.* ¶ 44, App. 66, and Interbank was able to tap fresh offering proceeds to pay off earlier noteholders, *id.* ¶ 46, App. 66-67.

Although Radin publicly attested to the accuracy of Interbank's balance sheets and private placement memoranda on many occasions – typically averring that these documents were "in conformity with generally accepted accounting principles," *id.* ¶¶ 52-71, App. 68-77 – Radin did not comply with GAAP or Generally Accepted Auditing Standards ("GAAS") in its audits. For example, Radin endorsed financial statements that did not disclose Interbank's related-party transfers, *id.* ¶ 82, App. 80; Radin reviewed financial documents that did not disclose specific amounts of one of the funds' loan losses, *id.* ¶ 91-94, App. 82; and the audited financial statements did not state that some of the Interbank funds were co-obligors with Interbank on a line of credit, *id.* ¶ 115, App. 86. Appellants' complaint also alleges that "superimposed over each of these misrepresentations is a single constant omission: the class members were not informed they were investing in a Ponzi scheme." *Id.* ¶ 76, App. 79.

Belizan first filed a complaint against Radin and numerous other defendants in July 2002, alleging violations of section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 ("Section 10 claims"). Compl. for Violation of the Fed. Securities Laws, No. 1:02-cv-01490 (D.D.C. July 26, 2002). Belizan's complaint was consolidated with a related action, and, in September 2003, the named plaintiffs filed an amended complaint against, *inter alia*, Radin and broker-dealer CIBC. In addition to the Section 10 claims, this complaint alleged violations of section 11 of the Securities Act of 1933 ("Section 11 claims"), 15 U.S.C. § 77k, against Radin for filing a series of materially false and misleading registration statements.

Consolidated Am. Class Action Compl. for Violation of the Fed. Securities Laws, No. 1:02-cv-01490 (D.D.C. Sept. 29, 2003).

The District Court granted Radin and CIBC's motion to dismiss all of the appellants' claims with prejudice. *In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84 (D.D.C. 2004). In particular, the District Court disposed of appellants' Section 10 claims on the grounds that they failed to adequately plead scienter or causation, and did not plead with the particularity required by FED. R. CIV. P. 9(b) and the Private Securities Litigation Reform Act. *Id.* at 94. The court also dismissed the Section 11 claims. *Id.* at 94-95. This court vacated the District Court's order of dismissal and remanded because the District Court "fail[ed] adequately to explain . . . why it dismissed Belizan's complaint *with prejudice*." *Belizan I*, 434 F.3d at 584 (emphasis added).

On remand, the District Court again dismissed all claims against Radin and CIBC – explaining that it was dismissing the claims with prejudice because "there was no indication that plaintiffs were capable of making additional allegations, consistent with their prior pleadings, that would cure the deficiencies in the claims against CIBC and Radin." *In re Interbank Funding Corp. Sec. Litig.*, 432 F. Supp. 2d 51, 55 (D.D.C. 2006). Back before this court on appeal, we vacated the District Court's order in part. We affirmed the District Court's dismissal of the Section 11 claims. *Belizan II*, 495 F.3d at 692-93. With respect to the Section 10 claims, however, we noted that the allegations in appellants' proposed complaint concerning scienter "specifically allege[d] that CIBC and Radin had access to particular pieces of information that would have revealed [Interbank]'s allegedly fraudulent and GAAP violating inter-fund transfers." *Id.* at 692 (quotation omitted). We therefore remanded for the District Court to evaluate appellants' pleading in light of *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), in which the Supreme Court held that a

"'strong inference' of scienter . . . 'must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Belizan II*, 495 F.3d at 691 (quoting *Tellabs*, 551 U.S. at 314).

Following our remand, the District Court approved a settlement agreement between appellants and CIBC, leaving Radin as the lone remaining defendant. In the meantime, appellants moved to file a proposed amended complaint against Radin under FED. R. CIV. P. 15(a). The proposed complaint alleged only Section 10 claims. The District Court denied the motion on the ground that the proposed amendment would be futile because it did not adequately plead reliance. *In re Interbank Funding Corp. Sec. Litig.*, 668 F. Supp. 2d 44 (D.D.C. 2009). The appellants proffered three legal theories as to why they had sufficiently alleged reliance: (1) they had properly pled direct reliance; (2) they were entitled to a presumption of reliance under *Affiliated Ute*; and (3) they were entitled to a presumption of reliance through the "fraud-created-the-market" theory.

The District Court rejected all three arguments. The trial court easily disposed of appellants' allegations of direct reliance, noting that appellants did not seriously contest this point. *Id.* at 49 & n.5. The District Court then pointed out that the *Affiliated Ute* presumption applies when reliance is impossible to prove, a situation not present in this case:

> Reliance is not "impossible to prove" in this case because Radin did offer positive statements: Radin repeatedly declared that Interbank's financial disclosures were materially fair and in conformance with generally accepted accounting principles. Indeed, plaintiffs' proposed amended complaint lists at least eighteen separate affirmative statements by Radin certifying the Interbank funds' balance sheets.

*Id.* at 51. The District Court also noted that the *Affiliated Ute* presumption does not apply "[w]here positive statements form a central part of the alleged fraud such that the evidentiary problems inherent in proving reliance on a nondisclosure are not present." *Id.* (brackets in original) (quotation omitted). Finally, the District Court refused to apply the fraud-created-the-market presumption of reliance, finding that, even assuming the validity of the fraud-created-the-market theory – which some circuits have applied "to those cases in which the securities were not qualified legally to be issued, and . . . there was a scheme to defraud or act to defraud," *e.g.*, *T.J. Raney & Sons, Inc. v. Fort Cobb*, 717 F.2d 1330, 1333 (10th Cir. 1983) – appellants did not connect Radin's alleged fraud to the securities' unmarketability. *In re Interbank Funding Corp. Sec. Litig.*, 668 F. Supp. 2d at 52-53.

Appellants timely appealed the District Court's decision to deny their motion, contesting only the District Court's refusal to invoke the *Affiliated Ute* presumption.

## II. ANALYSIS

Rule 15(a)(2) instructs district courts to "freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). "When the district court denies a motion for leave to amend under Rule 15(a), we review its decision for abuse of discretion bearing in mind that the rule is to be construed liberally." *Belizan I*, 434 F.3d at 582 (citation omitted). However, a district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that "futility of amendment" is permissible justification for denying Rule 15(a) motion); *see also Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006) (noting that review in a case of this sort is akin "to review of a Rule 12(b)(6) dismissal based on the allegations in [an] amended complaint"). In these circumstances, the standard of review is *de novo*. *See Gonzalez-*

*Vera v. Townley*, 595 F.3d 379, 381 (D.C. Cir. 2010) (standard of review for motion to dismiss).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation and quotation omitted). For legal conclusions, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable." *Id.*

Appellants, on appeal, seek reversal of the District Court's denial of their Rule 15(a) motion on the ground that they properly pled all elements of a cause of action under SEC Rule 10b-5. Rule 10b-5 makes it unlawful for any person, in connection with the purchase or sale of any security:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b-5. To prevail under Rule 10b-5, the appellants here must demonstrate, in connection with their purchase of Interbank securities, that (1) a material misrepresentation or omission was made "with an intent to deceive, manipulate, or defraud"; (2) they reasonably relied on that misrepresentation or omission; and (3) they suffered an economic loss as a result. *Media Gen., Inc. v. Tomlin*, 532 F.3d

854, 858 (D.C. Cir. 2008) (quotation omitted). Only the reliance prong of this test is at issue in this appeal.

In *Affiliated Ute*, the Supreme Court permitted the plaintiffs to benefit from a *presumption* of reliance. *Affiliated Ute* involved a bank that served as the transfer agent for all shares of a stock that had been issued to each "mixed-blood" member of the Ute Indian Tribe. The stock represented, *inter alia*, "all unadjudicated or unliquidated claims against the United States" and "all gas, oil, and mineral rights of every kind . . . to which the mixed-blood members of the said tribe [were entitled]." 406 U.S. at 136. Two assistant managers of the bank devised a scheme to purchase shares from mixed-bloods for themselves and other non-Indians for less than fair market value. *Id.* at 148. The Court held that the managers possessed an affirmative duty, under SEC Rule 10b-5, to disclose to the mixed-blood sellers that they had a financial interest in the transactions. *Id.* at 153. The Court explained:

> It is no answer to urge that, as to some of the petitioners, these defendants may have made no positive representation or recommendation. The defendants may not stand mute while they facilitate the mixed-bloods' sales to those seeking to profit in the non-Indian market the defendants had developed and encouraged and with which they were fully familiar. The sellers had the right to know that the defendants were in a position to gain financially from their sales and that their shares were selling for a higher price in that market.

*Id.* The Court then held that "[u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Id.*

The Third Circuit has applied the *Affiliated Ute* presumption in a case involving (1) failures to disclose, *i.e.,* "pure omissions"; and (2) failures to clarify "true but misleading

statements" relating to investment research, *i.e.,* "half-truths, which, although analytically closer to lies than to nondisclosure, are obviously closer to omissions than are pure misrepresentations." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 202 (3d Cir. 1990) (citation, ellipsis, and internal quotation marks omitted). The Second and Tenth Circuits likewise have not followed a formulaic approach in these mixed cases, applying the presumption when reliance on a negative would be practically impossible to prove. *Joseph v. Wiles*, 223 F.3d 1155, 1162 (10th Cir. 2000); *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981). On the other hand, the Fourth, Fifth, Ninth, and Eleventh Circuits have applied the *Affiliated Ute* presumption more restrictively. *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007) ("primarily based on omissions"); *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) ("cases that primarily allege omissions"); *Cox v. Collins*, 7 F.3d 394, 396 (4th Cir. 1993) ("only nondisclosure"); *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 756 (11th Cir. 1984) ("primarily omission cases").

No court of appeals has applied the *Affiliated Ute* presumption in a case involving a claim that primarily alleges affirmative misrepresentations. *See, e.g.*, *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 192 (3d Cir. 2001) ("[N]o presumption arises in cases of alleged misrepresentations."); *Joseph*, 223 F.3d at 1162 ("*Affiliated Ute*'s holding is limited to omissions as opposed to affirmative misrepresentations."); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 529 (5th Cir. 1992) ("The *Ute* presumption, however, operates only in omissions cases, not where plaintiffs assert positive misrepresentations of material information."). Indeed, appellants concede that they would not be entitled to a presumption of reliance in a case in which they merely alleged that the defendants did not disclose that their affirmative misrepresentations were false. Appellants' Reply Br. at 6.

Appellants argue that their claims are instead premised on Radin's alleged *omission* of the fact that Interbank operated as a Ponzi scheme in Interbank's financial statements, which Radin audited. Most of these financial statements were balance sheets. Second Amended Complaint ¶¶ 52-71, App. 68-77. A balance sheet reflects a company's financial position at a particular point in time by showing assets (resources controlled by the company), liabilities (creditors' claims on the company's resources), and stockholders' equity (stockholders' claims on the company's resources). The accounting model of a balance sheet can be represented by the following equation:

$$\text{Assets} = \text{Liabilities} + \text{Stockholders' Equity}.$$

*See* FRED PHILLIPS ET AL., FUNDAMENTALS OF FINANCIAL ACCOUNTING 12-13 (3d ed. 2011). The balance sheets of a profitable company would show increasing assets and concomitant increases in stockholders' equity over time as the company's investments gained value. By contrast, the balance sheets of a Ponzi scheme – which "generally describes a pyramid-type investment scheme where investors are paid profits from newly attracted investors promised large returns on their principal investments," *In re Fin. Federated Title & Trust, Inc.*, 309 F.3d 1325, 1327 n.2 (11th Cir. 2002) – would show decreasing assets as available cash is depleted to pay out promised rates of return to investors. Because the Ponzi scheme's liabilities would not decrease as new investors continued to contribute capital, the balance sheets would show decreasing stockholders' equity as the scheme paid out rates of return. Consequently, appellants' characterization of Radin's failure to disclose the Ponzi scheme as an omission is off the mark. The label "Ponzi scheme" is simply a popular characterization of a fraudulent business practice that an accurate representation of the balance sheets would reveal. In order to operate as a Ponzi scheme, Interbank's financial statements necessarily misrepresented the company's financial

position in order to attract new investors, and Radin affirmatively misrepresented the accuracy of these statements by stating that they fairly presented Interbank's financial position and conformed with GAAP.

Even aside from the allegation that Radin failed to disclose the operation of a Ponzi scheme, other sections of the complaint confirm that the crux of appellants' claims are Radin's affirmative misrepresentations of Interbank's financial statements. For example, the complaint alleges that Radin publicly attested to the accuracy of numerous Interbank balance sheets as well as the fact that the balance sheets conformed with GAAP. Second Amended Complaint ¶¶ 52-71, App. 68-77. The District Court correctly considered these attestations "positive statements," 668 F. Supp. 2d at 51, which encompassed Radin's other alleged misdeeds pertaining to the nondisclosure of Interbank's inter-fund transfers, loan losses, and lines of credit secured by a lien on some of the funds' assets. Appellants portray these errors as failures to disclose, but "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 129 S. Ct. at 1949, so we need not accept this characterization. Had the financial statements *not* included Radin's express certification, Radin's silence about these errors might have been akin to the silence of the bank managers in *Affiliated Ute*, 406 U.S. at 153. But Radin did make express attestations, which were affirmative misrepresentations that encompassed the alleged omissions cited in the appellants' complaint. The *Affiliated Ute* presumption is therefore inapplicable.

This analysis is not inconsistent with the Fifth Circuit's decision in *Akin v. Q-L Investments, Inc.*, 959 F.2d 521 (5th Cir. 1992), on which appellants heavily rely. Appellants' Br. at 16 & n. 6. In *Akin*, the plaintiffs argued that they were entitled to the *Affiliated Ute* presumption of reliance for both (1) start-up

balance sheets and (2) corporate balance sheets, with respect to which the defendant accounting firm had furnished reports. The start-up balance sheets merely indicated the initial capitalization of the company at issue, along with a brief statement that the company intended to acquire an apartment complex and offer partnership interests for sale in the future. *Id.* at 527. The corporate balance sheets, by contrast, "included a statement of assets, liabilities, and shareholders' equity, a statement of revenue, expenses, and retained earnings, and a statement of source and application of funds, along with extensive notes." *Id.* at 528. The Fifth Circuit held that plaintiffs could rely on the *Affiliated Ute* presumption for the start-up balance sheets but *not* for the corporate balance sheets, because the latter "disclosed considerable information about the relationship" between the different entities at issue. *Id.* at 529-30. Here, the Interbank financial documents, as described in appellants' complaint, are more similar to *Akin*'s corporate balance sheets than its start-up balance sheets, because they included a significant amount of useful information to investors. *E.g.*, Second Amended Complaint ¶ 69, App. 76 (noting that, in addition to balance sheets for Interbank fund, Radin audited "related statement of operations, changes in stockholders' equity, and cash flow for each of the years then ended"). To quote the *Akin* court: "Any wrong lies in ignoring accounting principles and distorting the numbers underlying the net worth of [the Interbank funds]. This is the stuff of misrepresentation and does not entitle plaintiffs to the *Ute* presumption." 959 F.2d at 530.

Finally, appellants press two additional arguments for why their complaint primarily alleges omissions. First, they contend that because Radin's non-disclosure of this Ponzi scheme was of "primary importance" to their case, they can rely on the *Affiliated Ute* presumption. Appellants' Br. at 17; *see also* Oral Arg. Recording 4:27-4:35. But the fact that a fraud is significant is irrelevant to whether the fraud stems from misrepresentations or omissions, which is the dispositive inquiry in determining the

availability of the *Affiliated Ute* presumption. Second, appellants rely on several district court opinions, which they characterize as holding that the *Affiliated Ute* presumption applies if a defendant fails to notify plaintiffs that they invested in a Ponzi scheme: *Katz v. MRT Holdings, LLC*, No. 07-61438-CIV, 2008 WL 4725284 (S.D. Fla. Oct. 24, 2008); *Getty v. Harmon*, No. C98-178, 1998 WL 919368 (W.D. Wash. Oct. 23, 1998); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996); *In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351 (N.D. Okla. 1977). To the extent that these cases are contrary to the foregoing analysis, we do not find them persuasive.

### III. CONCLUSION

For the reasons indicated in the foregoing opinion, the judgment of the District Court is affirmed.